# EXHIBIT C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

------------------------------------------x

| | : | |
|---|---|---|
| In Re: | : | Multi-District Litigation |
| BIOMET M2A MAGNUM HIP | : | 3:12-md-2391 RLM-CAN |
| IMPLANT PRODUCTS LIABILITY | : | |
| LITIGATION (MDL 2391), | : | |
| | : | |
| This document refers to: | : | |
| ALL CASES | : | |
| | : | |

------------------------------------------x

## DECLARATION OF ALEXIS CLARK IN SUPPORT OF BIOMET'S DISCOVERY EFFORTS

I, Alexis Clark, declare as follows:

1. I am Senior Consultant for Electronic Discovery for Recommind, Inc. ("Recommind"), which has been engaged to provide electronic discovery services to the Biomet defendants.

2. Prior to joining Recommind, I was a Client Director at Autonomy managing large scale, cloud-based archiving solutions for e-Discovery, compliance, and records management. I also served as the Senior Manager of Operations and Corpus Analysis at H5 supporting accelerated document review. I have a background in linguistics and information retrieval and was a Lead Annotator at the Linguistics Data Consortium at the University of Pennsylvania supporting Defense Advanced Research Projects Agency (DARPA) funded projects in the areas of information extraction, document classification, and topic detection. I have 6 years of experience in e-Discovery and Data Management and almost 10 years of experience implementing data categorization techniques.

3. Recommind is a leader in unstructured data management, analysis and governance technology, delivering search-powered business applications that transform the way organizations find, manage, analyze and act upon data inside and outside the corporate network. Recommind's solutions are all built on the CORE (Context Optimized Relevance Engine) platform, which automatically accesses, organizes and analyzes large volumes of information. CORE's Predictive Analytics enable enterprises and law firms to identify patterns in data sets and to group, prioritize and assess documents before performing a single search. This can greatly reduce the time and costs associated with finding, processing and analyzing corporate data. Recommind is headquartered in San Francisco and has offices in New York, Boston, London, Sydney and Bonn, Germany.

6040042v.1

4. As a Senior Consultant for Electronic Discovery at Recommind, I am routinely called upon to render advice on how Recommind's technology and services, including "Predictive Coding," can assist our customers. This advice includes "best practices" on using predictive coding to assist in a reasonable and cost-effective review of electronically stored information ("ESI"). I have been in this position since May 2012.

5. I am familiar with the circumstances of this action related to electronic discovery. I respectfully submit this declaration in support of the discovery process implemented by Biomet in this matter.

## Recommind's Technology-Assisted Review Services

6. Recommind's Predictive Coding functionality, provided in its Axcelerate® document review platform, combines a proprietary, advanced text categorization algorithm with an iterative document review workflow. Predictive Coding is a powerful and cost-effective technology and document review methodology that enables attorney to find documents relating to a particular person, timeframe, topic, communication, issue, or concept. The results can be a better informed, quicker, more accurate and consistent review process where costs have been seen to be 50-90% less than linear review.

7. This Predictive Coding workflow begins with the identification of a "seed set" or initial group of relevant documents that is developed and tested by an attorney familiar with the case. The attorney also reviews a random "control set" of documents, which provides a baseline responsiveness rate for the document population. Based on the seed set, Axcelerate analyzes the remaining documents in the review site to "find more like this" and suggests the next potentially-relevant set of documents for review. All or a subset of these documents are then reviewed for relevance by the case team. This process continues in an iterative manner until the percentage of relevant documents returned by the software is sufficiently low.

8. At that point, a random sample is drawn from the set of documents that were not reviewed for relevance. The results of this review are then compared against the results from the initial control set to determine the recall (the proportion of relevant documents identified during a review) and precision (the proportion of identified documents that are relevant) of the search and review process.

9. Beginning in June 2012, Biomet completed a seed set and control set review as well as seven iterations of the predictive coding workflow. To date, the responsiveness rate of the documents suggested in these iterations indicates that Axcelerate has learned to distinguish relevant documents, and that the review should proceed through additional iterations until the relevance of documents returned by Axcelerate is sufficiently low.

## Statistical Sampling

10. At Recommind's recommendation, Biomet conducted a number of statistical samples to obtain information about Biomet's data with a reasonable degree of statistical certainty.

6040042v.1

11. A random sample with a confidence level of 95% and estimation interval of 2.377% consisting of 1,689 documents was drawn from the 2.5+ million documents published to Axcelerate. This sample was reviewed to obtain a baseline relevance rate for the document population created by keyword culling. 273 documents were identified as relevant in this sample, indicating with 95% confidence that the percentage of relevant documents in the population is between 184,268 and 229,162 or stated in percentages, between 14.41% and 17.91%.

12. Further, a random sample with a confidence level of 99% and estimation interval of 2% of 4,146 documents was drawn from the total 19,508,216 document collection. This sample was reviewed to obtain a baseline relevance rate for the complete document population. After review, 80 documents were identified as relevant and the remaining 4,066 were found to be non-responsive. Projecting these results over the source data indicates with 99% confidence that there are between 267,490 and 481,627 responsive documents in the population. This translates to an overall estimated responsive rate of between 1.37% and 2.47% of the entire document population.

13. In addition, the efficacy of the keywords was tested using statistical sampling. A random sample with a confidence level of 99% and estimation interval of 2% of 4,146 documents was selected from the "null set," the 15,576,529 population of documents not published to Axcelerate, to obtain the relevance rate for that document population. After review, 39 documents were found to be responsive and 4107 were found to be non-responsive. Projecting these results over the source data indicates with 99% confidence that there are between 86,299 and 206,541 responsive documents in the population. This makes up a range of between .55% and 1.33% potentially responsive documents in the culled out data set that was not published to Axcelerate for predictive coding and review.

**Plaintiffs' Discovery Proposal**

14. I understand that the plaintiffs in this matter have proposed that predictive coding be applied to Biomet's entire 19.5+ million document collection without first utilizing keyword culling.

15. In principle, I agree that the results from keyword search alone are less than perfect, at times leading to both over and under capture. In the case of keyword culling, this might result some relevant documents being missed.

16. However, I believe that the results of the statistical sampling show the efficacy of the keyword approach used. Using the mean of the range estimates, the relevancy rate in the documents published to Axcelerate is 16.16%, whereas the relevancy rate of the remaining documents is only .94%. The results indicate that a very low number of potentially responsive documents were missed.

17. In addition, due to the low richness of the collection, culling data with keywords prior to predictive coding made economic sense. Indeed, in my experience, keywords are often successfully used by Recommind's clients to cull data prior to beginning the predictive coding workflow.

18. According to the Declaration of Eric Seggebruch filed concurrently herewith, the cost of processing, ingesting, enriching and running predictive coding on Biomet's full 6.39 terabyte collection, as plaintiffs suggest, could be as high as $4,252,950. It may be somewhat less with deduplication.

**Joint Predictive Coding Training**

19. I understand that the parties disagree regarding whether the predictive coding training should be restarted so that the software may be trained jointly by the parties.

20. I further understand that Biomet has offered plaintiffs the option to add relevant documents to the data set and use them to train Axcelerate in the remaining iterations.

21. Implementing plaintiffs' input in this manner would not require restarting the predictive coding workflow. Unlike other predictive coding software, Axcelerate does not require "re-stabilization" or a do-over when new data is combined with old data. This new data can be used immediately to train Axcelerate to find similar documents.

22. In addition, I note that joint training of Axcelerate by opposing parties is rare. In my tenure at Recommind, I have been aware of only one case in which joint training was implemented.

23. Pursuant to Title 28 of the United States Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: March 30, 2013

_____
Alexis Clark