# EXHIBIT D



A Professional Corporation

**HOUSTON**
The Lanier Law Firm, PC
6810 FM 1960 West
Houston, TX 77069
Post Office Box 691448
Houston, TX 77269
(713) 659-5200
Fax (713) 659-2204

**LOS ANGELES**
The Lanier Law Firm, PC
2029 Century Park East
Suite 1400
Los Angeles, CA 90067
(310) 277-5100
Fax (310) 277-5103

**NEW YORK**
The Lanier Law Firm, PLLC
Tower 56
126 East 56th Street
6th Floor
New York, NY 10022
(212) 421-2800
Fax (212) 421-2878

**PALO ALTO**
The Lanier Law Firm, PC
2200 Geng Rd., Suite 200
Palo Alto, CA 94303
(650) 322-9100
Fax (650) 322-9103

February 7, 2013

**VIA ELECTRONIC MAIL AND FEDERAL EXPRESS**
jwinter@pbwt.com
John D. Winter, Esq.
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036

Re:   In Re: Biomet M2A Magnum Hip Implant Products Liability Litigation
      Case No. 3:12-md-2391

Dear Mr. Winter:

Enclosed please find Plaintiffs' First Request for Production of Documents To Defendants (RFPs). With respect to the production of documents in this case, Plaintiffs have requested the following:

1.   Predictive coding using relevance determinations made by representatives of Plaintiffs and Defendants be applied to determine the initial selection of documents to be produced.

2.   All custodians and data sources which were not included in the initial collection but have been identified as possibly having discoverable documents be added to the collection against which predictive coding is to be applied.

3.   All non-privileged documents already identified by keyword searches be immediately produced to Plaintiffs.

It is our understanding that the production in <u>Benson v Biomet, Inc.</u>, (ED Wa 2:12-cv-05131) consists of 255,499 documents, totaling 1,104,730 pages. If that is incorrect or more documents have been produced, please let us know immediately.

It is also our understanding that the initial collection ("initial collection") from which the <u>Benson</u> production was culled was created by applying the keywords listed in Exhibit C to the August 15, 2012 letter from Jenya Moshkovich to Robert G. Godosky in <u>Faber v. Biomet</u> ("August 15 letter") to the files of the custodians and data sources respectively listed in Exhibits A and B to the August 15 letter. MDL Leadership Plaintiffs did not participate in the selection of those keywords, and dispute their adequacy as well as the use of the keyword search model in general.

Even if Plaintiffs had been involved in the selection of the keywords used (which it is our understanding they were not), keyword searches have been demonstrated to only produce 20-30% if responsive documents. The fact that Biomet was only able to identify 1,104,730 pages when over 60 million pages of documents were produced in the DePuy ASR MDL litigation and over 80 million pages were produced in the YAZ MDL litigation, show that Biomet's search process and results are inadequate for the Biomet MDL.

However, since Defendants have endorsed those keywords by using them to create the initial collection, Plaintiffs demand Biomet produce all non-privileged documents that those keywords identified. To be clear, Plaintiffs demand all of the documents Biomet's keyword search results returned *before* Biomet's predictive coding vendor further limited and restricted that set of documents using predictive coding.

In Plaintiffs' RFPs, Plaintiffs specifically demanded that the manner of collection of responsive documents be the joint predictive coding method in which both parties (not one party) mutually agree on the initial selection of documents, the initial custodians and data sources used, and the process of collection. As has been done in other MDL litigations such as Actos, representatives from both parties will sit down with a mutually agreed upon set of custodians and make relevance determinations that train the predictive coding program as to which documents are responsive to Plaintiffs' Requests or otherwise relevant to the litigation. Those "relevance" decisions will be used to predict which other responsive documents will be collected from other custodians.

To be clear, predictive coding will not be used in the manner Defendants had previously used it in the individual cases identified above – the result of which minimized or restricted the production of documents responsive to keywords Defendants themselves developed. Such a design is inherently unable to produce a statistically valid recall rate (relevant documents calculated against an adequate random sample of the entire initial collection).

To summarize, Plaintiffs demand that:

1. the predictive coding be performed cooperatively, with Plaintiffs' full participation in custodian selection, training process and training set document classification; and
2. the validity of the entire process be validated via achievement of an acceptable recall rate, within an acceptable margin of error, calculated against an adequate sample of the entire raw population against which the predictive coding was performed.

Further, since Defendants have acknowledged that their initial collection "probably" did not include additional custodians or data sources which have been identified, when the new predictive coding is performed, the raw population against which it will checked will include all those additional custodians and data sources.

We look forward to working with you in collecting documents for production in the Biomet MDL in an efficient and effective manner that is mutually agreeable to both parties. Please feel free to contact me if you have any questions.

Sincerely,

W. Mark Lanier, Esq.
Plaintiffs' Co-Lead Counsel