# EXHIBIT I

## Moshkovich, Jenya (x2881)

| | |
|---|---|
| **From:** | Moshkovich, Jenya (x2881) |
| **Sent:** | Friday, March 08, 2013 4:09 PM |
| **To:** | 'Richard J. Arsenault ' |
| **Cc:** | Anapol, Thomas (tanapol@anapolschwartz.com); Mark Lanier (WML@lanierlawfirm.com); Winter, John D. (x2836) |
| **Subject:** | RE: Biomet:  Predictive Coding  (Draft to Send to Defense Counsel) |
| **Attachments:** | Prod 2 letter Exh A.PDF; Prod 2 letter Exh B.PDF |

Richard,

Please see below.

_____

**Jenya Moshkovich**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Tel: 212.336.2881
Fax: 212.336.2966
jmoshkovich@pbwt.com

**From:** Richard J. Arsenault [mailto:rarsenault@nbalawfirm.com]
**Sent:** Monday, March 04, 2013 5:37 PM
**To:** Winter, John D. (x2836); jladue@lck-law.com
**Cc:** tanapol@anapolschwartz.com; wml@lanierlawfirm.com; 'jthorpe@ilsteam.com' (jthorpe@ilsteam.com); Parker, Jerrold S. (Jerry@yourlawyer.com); Daniel Robinson (drobinson@rcrlaw.net); Jennifer M. Hoekstra; Daniel C. Burke (dburke@yourlawyer.com); Paul R. Cordella (Paul.Cordella@LanierLawFirm.com); 'dforrest@ilsteam.com' (dforrest@ilsteam.com)
**Subject:** Biomet: Predictive Coding (Draft to Send to Defense Counsel)

John:

Pursuant to Principle 2.01 of the Order Relating to the Discovery of Electronically Stored Information, we have been discussing methods for identifying discoverable ESI and the associated production of same. Plaintiffs have proposed that predictive coding be employed. Defendants have also proposed using predictive coding, but only after first narrowing the universe of documents by applying search terms, and then only in a manner that further eliminates documents identified in the search term results. Given their radically different profiles for identifying discoverable ESI, plaintiffs are requesting predictive coding be employed from the onset based on the many studies suggesting exponentially greater efficacy with this approach. To first filter documents using search terms that at best can only locate less that 25% of relevant documents strikes us as an unacceptable approach.

During our "meet and confer" today, we stated we would summarize our predictive coding proposal. As promised, here it is;

1. Defendants identify all potential custodians and data sources.

    A list of custodians and data sources is attached. Biomet has collected a very large amount of data from all of the shared sources it has identified and from the e-mails, hard drives, dedicated network storage, and hard copy files of the primary individuals with responsibility for Biomet's metal-on-metal devices. If, in reviewing Biomet's documents, plaintiffs identify additional custodians that appear to be particularly relevant, Biomet will be open to meet and confer on collecting data from those custodians.

2. Parties confer and agree on the custodians and data sources to be collected, with disagreements resolved by the Court or a third-party special master agreed by the parties or appointed by the Court.  The raw population consists of all documents from these custodians and data sources.

    See response to #1 above

3. The parties confer and agree on the relevant topics, with disagreements resolved by the Court or the special master.

    Plaintiffs have already identified 184 topics in their requests for production. If, as the litigation proceeds, additional relevant topics are identified, plaintiffs can follow up with supplemental document requests.

4. An appropriate predictive coding system is trained through a collaborative process by both parties with respect to each topic, with procedures agreed upon by the parties and their vendor (and not unilaterally imposed by one party).  Determinations of document classification (relevance) for training are made jointly and cooperatively by the parties, with disagreements resolved by the Court or the special master.

    The predictive coding software is already trained based on virtually identical requests for production received in prior cases. Biomet has already conducted seven predictive coding iterations and will not agree to start training over, but we can add relevant documents provided by plaintiffs to the data set and use them to train the predictive coding software in the remaining iterations. Unlike other predictive coding software, Recommind's Axcelerate does not require "re-stabilization" or a do-over when new data is combined with old data. We are also willing to give plaintiffs a random sample of non-responsive documents and, if you believe any to be responsive, use them to train the predictive coding software. Lastly, Biomet has already attempted to engage in a collaborative process by providing plaintiffs with a list of keywords and offering plaintiffs the opportunity to supplement the list. Although plaintiffs have, so far, declined to collaborate, that offer still stands.

5. The trained system is applied to the raw collection and a production set of relevant documents is identified.

The cost of applying predictive coding to the entire raw collection would be far too high and the ratio of relevant to irrelevant documents far too low. Keywords are a reasonable and commonly-used approach to cull large volumes of data and, as offered previously, if plaintiffs believe that relevant and reasonably-targeted keywords should be added, Biomet is willing to meet and confer on this issue.

6. A random sample is taken from the raw collection and the parties jointly determine the relevance of the documents in the sample, with disagreements resolved by the Court or special master. The sample size shall be sufficient to provide at least 385 documents determined to be relevant.

To demonstrate that plaintiffs' concern that an unacceptable amount of relevant documents was not picked up by the keywords is unfounded, Biomet is willing to take a random sample (99% confidence level +/- 2%) of documents from that set and produce the non-privileged documents to plaintiffs. If, in reviewing these documents, plaintiffs identify additional relevant and reasonably-targeted keywords, Biomet is willing to meet and confer on adding them. Biomet is also willing to use these documents to train the predictive coding software in the remaining iterations

7. If recall is at least 85% with an error margin of 5%, the process shall be deemed complete and all relevant documents identified by the predictive coding system, save those withheld for privilege and so logged, shall be produced. (Recall is calculated based on the random sample relevance determinations and the production set identifications of those documents made by the trained system.)

Biomet will not agree to a set recall standard in advance but will share the recall achieved once it believes that it has found a significant number of responsive documents in the population. Biomet is willing to meet and confer with plaintiffs at that point on whether the recall achieved was sufficiently high or whether document review should continue.

8. If recall does not reach that level, the process will be repeated beginning with step 4 above until the specified recall is achieved, or the parties otherwise agree.

See response to #7 above.

Please let us know if this protocol is acceptable. If it is not, let us have your proposal or alternatively your thoughts on whether we need to continue the dialogue. We'd appreciate being favored with a response within the next day or so. We'd like this matter either resolved before the next status conference or raised as a topic with the court at that time. We are available this week with our vendor. Thanks.

**RICHARD J. ARSENAULT**



Licensed in LA, TX, CO & D.C.
[CV](#) | [Web](#) | 800.256.1050

NOTICE: This E-mail (including attachments) is confidential, covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, and may contain attorney-client materials and/or attorney work product, legally privileged and protected from disclosure. This e-mail is intended only for the addressee named above. If you are not the intended recipient, please note that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender if you have received the message in error, then delete it and any and all copies. Thank you.

4