# EXHIBIT J

# New York Law Journal

ALM Properties, Inc.
Page printed from: *New York Law Journal*

Back to Article

## Technology-Assisted Review Is a Promising Tool for Document Production

Barry Kazan and David Wilson

New York Law Journal

03-18-2013

For lawyers and clients overwhelmed with the cost and aggravation of conducting electronic discovery, a new, more efficient method is taking hold. This methodology, known as predictive coding or technology-assisted review, was developed by e-discovery companies that claim it can provide a significant shortcut in large document reviews and therefore a substantial cost savings. In the last year, the new methodology has been addressed by courts, including those in New York. Some published research on the effectiveness of the technique has shown promise, and a recent article in The Wall Street Journal reported positive results in a case where a court approved the use of predictive coding over the objection of the party that sought the discovery.

In general terms, predictive coding is a way of using technology to extrapolate to a large set of data the results of human relevance decisions on a subset of that data. The process starts with lawyers who are most familiar with the issues in a case or with a set of document requests reviewing the subset of data. These reviewers generally generate a "seed set" of documents, each document of which is coded for relevance, privilege or other criteria. The seed set will include documents that are deemed both relevant and irrelevant. Those selections are then used by the computer to generate relevance rankings for the larger group of documents. The relevance rankings are then tested by the reviewing lawyers to refine the computer analysis. The process is analogous to a spam filter whereby the lawyers and the computer interact to achieve a level of certainty as to what is relevant. Some published studies maintain that the results of this approach are more accurate than an entirely human review of the results of keyword or Boolean searches. With a computer program doing the sorting work of junior lawyers, the savings in large cases can be substantial.

Advocates of technology-assisted review compare the anticipated costs of complying with discovery requests using search terms and human review against the projected costs of using predictive coding, citing studies that predict significant cost savings from using this approach. Those studies also contend that the accuracy of properly constructed technology-assisted reviews exceeds that of purely human reviews, because human reviews apparently miss a startlingly large percentage of relevant documents.

Opponents of the proposed approach question the soundness or applicability of the studies and are fundamentally uncomfortable with the notion that in a technology-assisted review, not every document is actually reviewed by a person. In addition, because the seed set that includes both relevant and irrelevant documents will generally be turned over to the receiving party, the producing party may be reluctant to supply documents that it would not have turned over in a manual review. Finally, concerns about the costs of resolving disputes and engaging in motion practice over the discovery process itself—given the lack of consensus on the appropriateness of technology-assisted review—may be a barrier to implementing the process.

Parties are free to agree to this or other shortcuts to extensive human review of the results of keyword searches. Courts have recently entered the fray on predictive coding in cases where an agreement is not reached. In the last year, at least five courts have addressed the use of technology-assisted review as a means of identifying responsive documents requested in discovery. In large matters, parties who are faced with significant costs for document review would do well to review these decisions.

**'Da Silva Moore'**

In [Da Silva Moore v. Publicis Groupe & MSL Group](#), 2012 WL 607412 (S.D.N.Y. Feb. 24, 2012), U.S. Magistrate Judge Andrew Peck entered an order, which at the time was the first case in which a court explicitly endorsed predictive coding in a written decision, declaring that "[c]omputer assisted review is an acceptable way to search for relevant ESI in appropriate cases."

Although it was widely reported via a press release from the defendants' computer vendor that Peck "ordered" the parties to use predictive coding, Peck made clear that the parties had agreed to the defendants' use of predictive coding and he was merely resolving disputes over the scope and implementation of the process. Id. at n.1.[1] Thus, in addressing the parties' disagreements, Peck considered the issues of which custodians should be searched, which sources of electronically stored information (ESI) must be searched and the protocol for use of the predictive coding tools. Id. at 7-12.

In examining the predictive coding protocol, Peck discussed to what confidence level the documents would be analyzed, the seed set that would be used and the fact that the plaintiffs would have access to those documents, the coding that would be done by the human reviewers and the number of iterative rounds that would be used to "train" the computer. Id. at 9-12. Importantly, Peck permitted the parties to return if they felt the defendants' protocol did not result in a properly trained computer. Id. at 12.

The plaintiffs had argued against the predictive coding protocol, alleging that the process violated the Federal Rules of Evidence regarding experts and that the results were not reliable Id. at 15. Peck overruled these objections, finding that the Federal Rules of Evidence were inapplicable at the discovery stage because there was no testimony being offered for admissibility at trial. Id. Similarly, Peck dismissed the plaintiffs' reliability concerns as premature at best, given the transparency of the process. Id.

Ultimately, Peck ruled that "predictive coding was appropriate considering (1) the parties' agreement; (2) the vast amount of ESI to be reviewed (over three million documents), (3) the superiority of the computer-assisted review to the alternatives (i.e., linear manual review or keyword searches), (4) the need for cost effectiveness and proportionality under Rule 26(b)(2)(C), and (5) the transparent process proposed by [the defendants]."

The plaintiffs filed objections to the Feb. 24, 2012 order with U.S. District Judge Andrew Carter. On April 26, 2012, Carter overruled the plaintiffs' objections, finding that Peck's rulings were "well reasoned and they consider the potential advantages and pitfalls of predictive coding software." Order at 3.

### 'In Re: Actos'

In [In re: Actos (Pioglitazone) Products Liability Litigation](#), MDL No. 6:11-md-2299 (W.D. La. July 27, 2012), the court entered an agreed-upon case management order that was extremely detailed and outlined how the predictive coding protocol would be implemented. The order stated that the "sample collection population" would be created from the emails of four key custodians (after a meet and confer process between the parties) and regulatory documents previously collected by the defendant Takeda.

The order provided that the defendant would have the ability to initially review the documents selected by the computer for a privilege analysis. Order at 10. Interestingly, once privilege was addressed, the order provided that the plaintiffs and defendant Takeda would each appoint three individuals (referred to as "experts" in the order) who would work with the vendor to "train" the software that would analyze the documents.[2] Order at 7-8. Thus, rather than the producing party making decisions on relevance of the initial sets that would be reviewed, the parties' experts would jointly make those determinations.

Similarly, the parties agreed that while attorneys for the defendant would have access to the entire sample collection population and would lead the computer training, "they will work collaboratively with the Plaintiffs' counsel during the Assessment and Training phases." Id. at 8. Once the software was deemed appropriately trained, the predictive coding analytics would be applied to the entire production, at which point the defendant's counsel would conduct the manual review and produce responsive documents. Id. at 13. The order also provided for a quality control process referred to as "Test the Rest" (an analysis of those documents that were not designated as part of the review set), which again is a process that contemplated the parties working together to review those documents. Id. at 14. Likewise, the order required that the parties review those documents that were part of the review set, but that were determined by counsel not to be subject to production. Id. at 15.

Finally, while the order preserved the defendant's right to seek cost-shifting, it defaulted to the defendant bearing the costs of production with the exception of the plaintiffs' costs in participating in the protocol, which were agreed to be borne by the plaintiffs. Id. at 16.

### 'Kleen Products'

For a while, it appeared that *Kleen Products v. Packaging Corp. of America*, No. 10-C-5711 (N.D. Ill.), was going to be another battleground for predictive coding. In that case, the plaintiffs were pushing for the application of some form of predictive coding to the defendants' production notwithstanding the fact that the defendants had already produced in excess of a million documents. While the magistrate judge conducted two days of hearings on the issue, those hearings did not result in a decision; rather, the magistrate judge urged the parties to cooperate and reach agreement. Ultimately, the plaintiffs withdrew

their request and the parties filed a stipulation confirming that fact.

**'EORHB'**

As proof that courts are becoming more attuned to the possible savings that result from predictive coding, one need look no further than the Delaware Chancery Court. In *EORHB v. HOA Holdings*, No. 7409-VCL (Del. Ch. Ct. Oct. 15, 2012), a vice chancellor of the court conducted a hearing and issued rulings on a motion for partial summary judgment and a motion to dismiss. At the conclusion of the hearing the court sua sponte introduced the concept of predictive coding. Specifically, the court stated:

This seems to be an ideal non-expedited case in which the parties would benefit from using predictive coding. I would like you all, if you do not want to use predictive coding, to show cause why this is not a case where predictive coding is the way to go… The problem is that these type of indemnification claims [at issue in this case] can generate a huge amount of documents. That's why I would really encourage you all, instead of burning lots of hours with people reviewing, it seems to me that this is the type of non-expedited case where we could all benefit from some new technology use.

Transcript of Oct. 15, 2012 Hearing at 66-67.

**'Global Aerospace'**

*Global Aerospace v. Landow Aviation*, No. CL 61040 (Va. Cir. Ct., Loudon County April 23, 2012), portrays what is probably the classic debate between linear review and technology-assisted review.

In that case, the defendants moved for a protective order permitting them to use predictive coding over the plaintiffs' objection. In their motion, the defendants indicated that it would cost approximately $2 million to review. They discussed the literature stating that linear review would generate a responsive rate of 60 percent and key word searches only 20 percent, and they proposed that predictive coding at a 75 percent responsive rate would be sufficient. In addition, they proposed to share their entire sample set with the plaintiffs.

The plaintiffs opposed the motion, arguing that "the production of documents is not a complicated concept." Indeed, they characterized it as one in which you "talk to the client. Locate the files. Look at the documents… Select the ones that are responsive and not privileged." The plaintiffs argued that a computer should not be searching the documents and that they are entitled to all responsive ESI, not just that which falls within the 75 percent confidence level.

Ultimately, the court granted the defendants' request to use predictive coding over the plaintiffs' objection. The order expressly provided that it was without prejudice to the plaintiffs challenging the completeness of the production and/or the ongoing use of predictive coding.

Defendants' position seems to have been validated according to a recent entry in The Wall Street Journal's law blog that reported on the results of using predictive coding based on an interview with counsel for the producing party in *Global Aerospace*. Counsel said he selected 5,000 of the 1.3 million total documents for the seed set and trained the program by manually coding them as relevant or irrelevant. The computer program used those selections to deem 173,000 of the 1.3 million as relevant. In testing those results with human review, producing party counsel reviewed 400 of the "deemed relevant" documents and found that about 80 percent were, in fact, relevant. Based on a sample of the more than 1.1 million documents the computer deemed irrelevant, only 2.9 percent were found to be relevant. According to some studies of the accuracy of human review, this so-called recall rate is significantly greater than that for human reviews. Moreover, producing counsel said that the total cost of this document production project was $200,000—far less than it would have cost to use human review.

**Conclusion**

Technology-assisted review is worth serious consideration in any case where the volume of data is likely to take a dozen or more lawyers two weeks or more to review the material. Of course, the more document custodians that are involved, the more likely it will be that technology-assisted review might add efficiency and save costs. Class actions or large-scale investigations may be good candidates for this approach, whereas smaller cases with few custodians and limited data generally are not.

In any case, technology-assisted review is not a substitute for careful lawyering, sound judgment and good planning. Lawyers must become familiar with the issues in a case and know their client's data well in order to construct a proper protocol and either work with opposing parties to agree on that protocol or prepare to apply for court approval. Particularly because most courts are not yet that familiar with technology-assisted review, they tend to require that the protocol implemented be transparent and open so it appears fair and will be easily understood by the receiving party. Whether this transparency will remain a requirement is the subject of current debate given the fact that the types of information made available in a transparent process (e.g., non-relevant documents, seed sets) are generally not made available in a linear review where only the results, not the process, are provided.

Finally, even in cases where technology-assisted review is beneficial, it may not be appropriate for all categories of documents. For example, where the conduct or knowledge of a particular custodian is at issue, it may be advisable to conduct a full-scale human review of all of his or her data.

In the end, technology-assisted review should be viewed as a promising tool in the arsenal of lawyers and clients who are looking to handle large-scale document productions in the most efficient and economical manner.

**Barry Kazan** *is a partner at Thompson Hine in New York.* **David Wilson** *is partner-in-charge of the Washington, D.C., office.*

**Endnotes:**

1. The plaintiffs disputed Peck's characterization of what they agreed to regarding the use of predictive coding.

2. The order included prohibitions against disclosure by the plaintiffs' designees of documents that would otherwise not be subject to disclosure under the protective order entered in that case.

Copyright 2013. ALM Media Properties, LLC. All rights reserved.