# EXHIBIT K

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

|  |  |
|---|---|
| IN RE: BIOMET M2A MAGNUM HIP IMPLANT PRODUCTS LIABILITY LITIGATION | Case No. 3:12-md-2391 |
|  | JUDGE ROBERT L. MILLER, JR. |
| THIS DOCUMENT APPLIES TO: ALL CASES |  |

To:    John Winter, Esq.
       PATTERSON, BELKNAP, WEBB, & TYLER, LLP
       1133 Avenue of the Americas
       New York, NY  10036

## PLAINTIFFS' FIRST REQUEST FOR THE
## PRODUCTION OF DOCUMENTS TO DEFENDANTS

Pursuant to Federal Rule of Civil Procedure 34, Plaintiffs in the above-referenced cases request Defendants, BIOMET, INC., BIOMET ORTHOPEDICS, LLC, & BIOMET U.S. RECONSTRUCTION, LLC, and any other Biomet named entities ("Defendants") to produce and permit the Plaintiffs' Steering Committee to inspect and copy the documents described below.

## DEFINITIONS

1.      "DOCUMENTS" as used in this request is coextensive with the meaning of the terms "documents," "electronically stored information" and "tangible things" as used in Federal Rule of Civil Procedure 34, and shall have the broadest possible meaning and interpretation ascribed to those terms under Rule 34 and the applicable Local Rules for the Northern District of Indiana.

Consistent with the above definition, the term "DOCUMENT" shall include, without limitation, ELECTRONIC DATA, ELECTRONIC DATABASES, ELECTRONIC MEDIA and any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or

otherwise maintained or reproduced COMMUNICATION or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, emails, voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes or meetings, correspondence, and communications (as defined below) of any type (including but not limited to video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, webcasts, powerpoints, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into useable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of YOU or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of YOU, or the former or present directors, offices, counsel, agents, employees, partners, consultants, principals, and /or persons acting on YOUR behalf.

2.      "ELECTRONIC DATA," "ELECTRONIC DATABASE," "DATABASE" and "DATA" mean the original (NATIVE ELECTRONIC FORMAT) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such terms include, by way of example only, COMPUTER programs (whether private, commercial or works-in-progress), programming notes or instructions, activity listings or electronic mail receipts and /or transmittals, output resulting from the use of any software program, including word processing

documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media or which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Such terms include any and all items stored on COMPUTER memories, hard disks, floppy disks, CD-ROMS, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, COMPUTER chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. Such terms also include the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

3. "ELECTRONIC MEDIA" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include COMPUTER memories, hard disks, floppy disks, cloud data center(s), CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, COMPUTER chips, including, but not limited to EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and/or transmittal, computers, servers and other network computers, backup tapes or systems, laptop computers, home or personal computers used for business purposes, a personal digital assistant, e.g. Palm Pilot, R.I.M., Blackberry, iPhone or similar device (generically known as "smart phones" or "PDAs"), and external storage devices (such as thumb drives or USB drives).

4. "NATIVE ELECTRONIC FORMAT" shall mean and refer the state of an electronic file as it presently exists on any and all COMPUTERS, ELECTRONIC MEDIA devices and NETWORKS or any other location where data may be stored (including back-up servers, deleted folders, hidden folders, etc.), with all of the file's original metadata intact, meaning that the metadata fields have not been altered, deleted, updated or modified in any way.

5. "NETWORK" means any hardware and/or software combination that connects two or more COMPUTERS together and which allows the COMPUTERS to share and/or transfer data between them. For the purposes of this definition, the connection between or among the

3

COMPUTERS need not be either physical or direct, *i.e.*, wireless networks, and sharing and/or transferring data via indirect routs utilizing modems and phone company facilities, In addition, there need not be a central file or data server nor a central network operating system in place, *i.e.* peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

6.     "COMPUTER" means all devices utilizing microchips to facilitate processing, analysis or storage of data, including microcomputers (as known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (as known as personal digital assistants or PDA's), minicomputers and mainframe computers. "COMPUTER SYSTEM," when used in reference to any COMPUTER, includes the following information: (a) the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications and/or shareware.

7.     "BIOMET HIP SYSTEM" is used to refer to, as broadly applicable as possible whether in the singular or plural, the Biomet M2a–Magnum, Biomet M2a-38, Biomet M2a–Taper, Biomet M2a–Ringloc, Biomet M2a-28mm, Biomet Stanmore, and Biomet Exceed ABT Hip Systems and any predecessor, successor or non-final derivation of this device.

8.     "YOU, "YOUR," "Defendant" and "Defendants" refer to Defendants (both collectively and individually) as well as all of their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives, including all corporations and entities affiliated with Defendants.  The term "YOU" and "YOUR" shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives.  The terms "YOU" or "YOUR" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, attorneys, joint ventures or other representatives.

9.     "COMMUNICATION" shall mean and refer to any oral, written, spoken or electronic transmission of information, including but not limited to, meetings, discussions, conversations, telephone calls, memoranda, letters, emails, test messages, postings, instructions, conferences, or

seminars or any other exchange of information between YOU or between YOU and any other person or entity.

10.     "RELATING TO," "RELATE TO," "RELATING," "REFERRING TO," "REFER TO," "CONCERNING" or "CONCERN" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including DOCUMENTS attached to or used in the preparation of or concerning the preparation of the DOCUMENTS.

11.     "STUDY" includes any research, analysis or examination, inspection or investigation (including, but not limited to, clinical investigations) or other activity by which data or information is acquired for the purpose of analysis or understanding. The term is intended to include studies which have been completed and studies which are still in progress regardless of whether such activity took place within or without the United States. It should include information and data acquired from such study regardless of the stated or original purpose of the study.

12.     "TEST" includes any kind of examination, experiment, scientific analysis or other inquiry or undertaking seeking to develop or acquire information or data. It should include information and data acquired from such tests regardless of the stated or original purpose of the test. The term is intended to include tests which have been completed and tests which are still in progress regardless of whether such activity took place within or without the United States. The term "TEST" is often used in conjunction with the term "STUDY" defined herein. A request for information concerning a test or study should be construed as including the following DOCUMENTS: the protocol for the conduct of the test/study, a statement of the conditions under which the test/study was intended to be conducted, a statement of the conditions under which the test/study was actually conducted, DOCUMENTS requesting that the test/study be performed, DOCUMENTS ordering that the test/study be performed, DOCUMENTS containing the original raw test/study data, DOCUMENTS containing the written test/study report and all attachments thereto, DOCUMENTS containing the test/study specifications, including the pass-fail criteria, any summary, abstract,

analysis, compilation, including evaluation or interpretation of the test/study and all investigators or entities, universities and/or laboratories involved in the testing.

13. "FOREIGN REGULATORY BODY" means any organization, including but not limited to the regulatory bodies, that regulate medical devices such has hip implants in Japan, Canada (Health Canada), Australia (TGA), the United Kingdom (MDA/MHRA) and any other Competent Authority or other entity within the European Union that is involved in the regulation of hip implants such as the BIOMET HIP SYSTEM.

14. "IDENTIFY" or "IDENTITY" with respect to natural persons or entities, means to give, to the extent known, the person's full name and present or last known address and telephone numbers, and when referring to a natural person, additionally, the present or last know place of employment.

15. "POSSESSION, CUSTODY OR CONTROL" shall mean and refer to any DOCUMENTS in your possession, custody or control. A DOCUMENT is deemed to be in your "possession, custody or control" if it is in your physical custody, or if it is in the physical custody of another person or entity and YOU: (a) own such document in whole or in part; (b) have a right by contract, statute or otherwise to use, inspect, examine or copy such DOCUMENT on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine or copy such DOCUMENT on any terms; or (d) have, as a practical matter, been able to use, inspect, examine or copy such DOCUMENT when you have sought to do so. Such DOCUMENTS shall include, without limitation, DOCUMENTS that are in the custody of your attorney(s), employees, staff, representatives and agents.

16. "PERSON" means natural person, as well as corporate and/or governmental entity.

17. "PREDICTIVE CODING" means the technology-assisted review classification process where the parties jointly use automated computer analysis to distinguish relevant from non-relevant documents based upon a training set of documents coded by subject matter experts selected by Plaintiffs and Defendants.

18. "RECALL", a standard statistical measure used in determining the successfulness of predictive coding (or any other classification process), is defined as the percentage of relevant

documents in a population which were in fact classified as relevant by the classification process; it will be calculated using a random sample of documents from representative custodians to be agreed upon by the parties.

19. "DEPARTMENT", "GROUP", "REGIONS", "DIVISIONS", "COMMITTEES" and/or "TASK FORCES" includes but is not limited to Biostatistics/Data Management Organization, Business Intelligence Team, Clin Res/Reg Aff., Clinical Research Organization, Corporate Accounts, Customs and Prototyping Team, Biomet Board Team, Biomet Clinical Research, Biomet Regulatory Affairs, Biomet Customer Service Department, Biomet Health Care Compliance, Biomet Worldwide Operations, Biomet Regional Logistics Department, Biomet Finance Department, Biomet Marketing Department, Quality Planning, Regulatory Affairs Department, Biomet International Orthopaedics Board, Biomet Management, Biomet Management Board, Biomet Regulatory Affairs, Biomet 3i, LLC, Biomet Europe BV, Biomet Argentina S.A., Biomet 3i International, Biomet Biologics, Biomet Austria GmbH, Biomet Australia Pty Ltd., Biomet 3i Belgium NV, Biomet Fair Lawn, Biomet Belgium BVBA, Biomet Canada, Biomet 3i do Brasil Ltda., Biomet Microfixation, LLC, Biomet CZ, s.r.o, Biomet Microfixation Canada, Inc., Biomet 3i Canada, Inc., Biomet Orthopedics, LLC, Biomet Danmark ApS, Biomet Chile, Biomet 3i Deutschland, Biomet Sports Medicine, LLC, Biomet Deutschland GmbH, Biomet China, Biomet 3i France, Biomet Trauma, Biomet El Salvador, Biomet 3i Dental Iberica S.L., Citra Labs, Biomet France SARL, Biomet Korea Co. Ltd, Biomet 3i Mexico, S.A. de C.V., EBI, LLC dba Biomet Spine & Bone Healing Technologies, Biomet Hellas S.A., Biomet Mexico S.A. de C.V., Biomet 3i Schweiz GmbH, EBI Patient Care, Inc., Biomet Magyarorszag Kft., Biomet Orthopaedic India Pvt. Ltd, Biomet U.K., Ltd, Interpore Cross International, Biomet U.K. ltd., Biomet New Zealand, Biomet 3i Netherlands B.V., Biomet 3i Nordic AB, Biomet Norge A.S., Biomet Japan, Biomet 3i Japan, Biomet Polska Sp.z.o.o., Biomet Orthopedics Puerto Rico, Inc., Biomet Korea Co., Ltd., Biomet Italia S.r.l.; Orthopedic Biomet CentroAmericana, Biomet Orthopedics Switzerland GmbH, Biomet Global Supply Chain Center, B.V., Biomet Netherland B.V., Biomet Spain, Biomet Portugal Unipessoal, Lda., Biomet Medikal Ltd.Sti, Biomet Cementing Technologies A.B., Zheijiang Biomet Medical Produccts Co., Ltd, Changzhou Biomet Medical Devices Cp., Ltd., Biomet S.E.A. Sdn. Bhd.,   Biomet Inc. Global

Quality/Clinical/Regulatory Affairs, Biomet Finance, Biomet Finance International Accounting, Biomet, Inc., LLC Financial Accounting, Biomet Orthopedics, LLC Financial Accounting, Biomet Healthcare Compliance, Biomet Orthopaedics LLC Marketing & Sales Territory Sales Offices, Biomet Orthopedics, LLC Medical Affairs, Biomet Healthcare Compliance, Biomet Inc. Human Resources and Legal, Biomet Orthopedics, LLC. Human Resources and Legal, Biomet US Reconstruction, LLC Human Resources and Legal, Biomet Orthopedics Marketing and Sales Territory Office.

20.     MEDICAL DEVICE REPORT (MDR) means any and all reports or complaints collected, review, analyzed, or received by YOU under YOUR duties and responsibilities set out in the Safe Medical Devices Act of 1990 (SMDA), the Food and Drug Administration Modernization Act (FDAMA), 21 C.F.R. § 803.1 *et seq.*, and all other obligations imposed on YOU by the FDA or U.S. state or federal regulations.

21.     The connectives "and" and "or" mean either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

22.     The use of the singular includes the plural and vice versa.

23.     Unless otherwise indicated, the relevant time period (sometimes referred to herein as the "RELEVANT TIME PERIOD") for the information sought for each document request is January 1997 to the present.

## INSTRUCTIONS

1.     In responding to this Request, YOU are required to produce all DOCUMENTS known or reasonably available to YOU, regardless of whether such DOCUMENTS are in YOUR POSSESSION, CUSTODY OR CONTROL or in the POSSESSION, CUSTODY OR CONTROL of YOUR agents, consignees, representatives or investigators, including YOUR attorneys or their agents, employees, representatives or investigators.

2.     If any of the DOCUMENTS or information requested cannot be produced in full, YOU are required to specify, to the extent possible, the reasons for YOUR inability to produce the remainder, and the approximate date when YOU expect to produce such DOUCMENTS, it at all.

8

3.      In identifying and collecting documents responsive to these Requests, YOU must collect responsive documents using PREDICTIVE CODING.   In this matter, the selection of documents to be collected and reviewed, and the determination of which reviewed documents are relevant and which are not, shall be made using PREDICTIVE CODING (instead of "search terms" or some other method) in such a manner that the success of the process may be determined via calculation of RECALL.   The predictive coding by subject matter experts shall be done jointly and cooperatively by the parties.

4.      If any request is deemed to call for the production of privileged or otherwise protected information or materials, YOU must comply with the privilege and work-product protocol contained in the MDL Case Management Order governing Privilege Assertions.   In the event no such Order is timely agreed upon by the parties or entered by the Court, Plaintiffs demand that, the extent YOU contend that any requested DOCUMENT is privileged and therefore not subject to production, YOU identify the DOCUMENT in YOUR on a privilege log describing the DOCUMENT sufficiently to allow Plaintiffs to move the court to compel its disclosure.   The description should include, but not be limited to, the following information:

(a) The name of the PERSON who prepared the DOCUMENT;

(b) The name of each PERSON to whom the DOCUMENT was addressed and/or distributed;

(c) The date of the DOCUMENT;

(d) The description of the general nature of the DOCUMENT;

(e) The specific privilege(s) which YOU contend applies to the DOCUMENT;

(f) The ground upon which YOU rely to establish the privilege as to the DOCUMENT;

(g) The reason for withholding the information including a statement of the legal basis for the claim of privilege, work product or other ground for non-disclosure;

(h) The date, time, location and parties for any DOCUMENT or COMMUNICATION alleged to be subject to the attorney-client privilege, work product privilege or other privilege grounds

5.    This Request imposes a continuing obligation upon YOU.    If after producing DOCUMENTS or information responsive to this Request additional information or DOCUMENTS become available to YOU, YOU are required to produce such additional DOCUMENTS or information.

6.    With respect to each DOCUMENT requested that has been lost, destroyed, or otherwise disposed of since its preparation or receipt, YOU shall provide the following information separately as to each such DOCUMENT:

(a)    A general description of the subject matter, author, recipient(s), date;

(b)    The IDENTITY of each person who has received a copy or had an opportunity to receive a copy thereof;

(c)    The last custodian of the DOCUMENT or copies thereof; and

(d)    The full particulars or circumstances whereby the DOCUMENT was disposed of, destroyed or otherwise lost.

7.    All DOCUMENTS produced in response to these Requests herein shall be either:

(a)    Organized and labeled to correspond with the number of the specific Request to which the DOCUMENTS are responsive;

(b)    Produced in the order and in the manner that they are kept in the usual course of business; or

(c)    In the manner as agreed by the parties.

8.    ALL DOCUMENTS requested shall include all DOCUMENTS and information that RELATE in whole or in part to the RELEVANT TIME PERIOD, or to events or circumstances during such relevant time period, even though dated, prepared or generated or received prior to RELEVANT TIME PERIOD.

9.     ALL DOCUMENTS that exist in electronic form are to be produced in electronic form and in their native electronic format, not in an electronic form that is merely a picture of a DOCUMENT such as a TIFF file, a TIF file, or a PDF file, with the Bates number applied in a manner that does not alter the DOCUMENT's metadata or its optical character recognition ("OCR") in any way.  Plaintiff reserves the right to negotiate with Defendants a manner of production of the DOCUMENTS.

10.     The headings used herein are not intended to limit in any way the scope of the requests.

**DOCUMENTS TO BE PRODUCED**

**DOCUMENT RETENTION AND DESTRUCTION POLICIES**

1.      DOCUMENTS that RELATE TO YOUR DOCUMENT retention or destruction policies, including but not limited to DOCUMENTS sufficient to identify the steps taken by or on behalf of YOU to preserve DOCUMENTS that are or may be discoverable in this action.  This request includes, but is not limited to, policies for: Paper documents, DATABASES, electronic mail, electronic documents, voicemail and instant messaging.  This request includes all documents in the possession, custody and control of Defendants, including but not limited to all documents held by Biomet Hip System Distributors, Third Party Contractors and Sales Representatives.

**CORPORATE ORGANIZATION**

2.      All DOCUMENTS that establish, chart or demonstrate relationships or lines of communication, responsibility, supervision or management accountability (including, but not limited to, corporate organization charts) for all departments, divisions, groups, panels or teams within YOU and YOUR subsidiaries or divisions, that are or were involved in any manner in researching, developing, testing, manufacturing, regulatory compliance, safety surveillance, marketing, promoting, advertising or selling, training, managing, investigating, or evaluating the BIOMET HIP SYSTEM, including but not limited to those areas indicated below.  In each instance, if YOU do not have a department and/or team dedicated to the BIOMET HIP SYSTEM in the identified area, YOU should produce the requested DOCUMENTS for the general department and/or team in the identified area whose responsibilities included the BIOMET HIP SYSTEM.

      a.      Preclinical Investigation.

      b.      Clinical Development.

      c.      Product Development and Design.

      d.      Adverse Event Reports/Medical Device Reports.

12

e.      Other Post-Marketing Safety Surveillance.

f.      Regulatory Affairs.

g.      Marketing and Sales.

h.      Scientific Affairs.

i.      Medical Affairs.

j.      Public Relations, including press and media relations.

k.      Corporate Communications.

l.      Medical Education.

m.      Project Development.

n.      Global Quality.

o.      Clinical Affairs.

p.      Commercialization.

q.      Investor Relations.

r.      Returns Warehouse.

s.      PMI Patient Matched Product.

t.      Research and Development.

u.      Clinical Operations.

v.      Limb Salvage and PMI.

w.      Global Regulatory Affairs.

x.      Any and all training programs involving the BIOMET HIP SYSTEM, including but not limited to internal training programs for employees, and external training programs for third party contractors and consultants and for physicians or other healthcare providers (including training programs for the implantation of the BIOMET HIP SYSTEM).

y.      Distributors, Sales Representatives and Third Party Contractors.

z.      Development of relationships with non-employee medical doctors or other healthcare providers or suppliers retained, paid or compensated in any other way, by or on behalf of Defendant to present materials and information regarding the BIOMET HIP SYSTEM (excluding experts retained for litigation).

aa.   To the extent that Defendant has a product specific group and/or team devoted to the BIOMET HIP SYSTEM, that group and/or team.

bb.   DOCUMENTS sufficient to identify or demonstrate the reporting relationships between and among each of the above departments and/or teams in Defendant's overall management structure.

3.   DOCUMENTS sufficient to identify by name, position and responsibility YOUR corporate officers and employees involved in any way with the development, design, manufacture, study, testing, marketing, sale, and/or distribution of the BIOMET HIP SYSTEM for the years YOU developed and marketed such systems.

4.   DOCUMENTS sufficient to identify by name, position and responsibility the members of YOUR board of directors (and any board committee or group with responsibility for the BIOMET HIP SYSTEM) for the years YOU developed and marketed the BIOMET HIP SYSTEM.

## PATENTS, TRADEMARKS, LICENSING AND ROYALTIES

5.   All DOCUMENTS that RELATE TO or reflect any patent (pending or issued) or patent application CONCERNING the BIOMET HIP SYSTEM.

6.   All DOCUMENTS that RELATE TO or reflect any product licensing agreements CONCERNING any product or technology contained in patents (pending or issued) or patent applications for the BIOMET HIP SYSTEM.

7.   All DOCUMENTS that RELATE TO any alleged infringement or dispute over ownership of any patents (pending or issued) RELATED TO the BIOMET HIP SYSTEM, including but not limited to any correspondence, pleadings, discovery or files related any threatened, pending, completed or dismissed patent or licensing litigation.

8.   All DOCUMENTS evidencing the licensing, authorization for use or other permitted use of trademarks, trade secrets or other non-patented proprietary information relating to the BIOMET HIP SYSTEM.

9.     All licensing, trademark or royalty agreements CONCERNING the BIOMET HIP SYSTEM.

## DEVELOPMENT/DESIGN

10.    All DOCUMENTS RELATING TO or reflecting the Design History File (21 C.F.R. § 820.3(e)) and Device Master Record (21 C.F.R. § 820.3(j) and 21 C.F.R. § 820.181) for the BIOMET HIP SYSTEM.

11.    All DOCUMENTS RELATING TO any specifications, whether design, manufacturing or performance specifications, CONCERNING the manufacture and assembly of the BIOMET HIP SYSTEM.

12.    All DOCUMENTS RELATING TO any prototypes or precursor designs for the BIOMET HIP SYSTEM whether denominated as such including any DOCUMENTS regarding large diameter metal on metal designs that may have been classified as "custom" devices including all DOCUMENTS reflecting the manufacture and use of such custom devices in any patients and all DOCUMENTS reflecting which consulting physicians participated in the use of custom devices on patients, any problems arising from such "custom" devices and investigation of said problems.

13.    All DOCUMENTS that RELATE TO any investigation or analysis by YOU or anyone else CONCERNING potential design or manufacturing problems or any potential defects in the BIOMET HIP SYSTEM and any prototype or precursor designs that may have been utilized through the use of "custom" devices on certain patients.

14.    All DOCUMENTS that RELATE TO any changes YOU considered making to the design of the BIOMET HIP SYSTEM or to the manufacturing process for the BIOMET HIP SYSTEM, regardless of whether or not YOU implemented the changes.

15.   All DOCUMENTS that RELATE TO or reflect why Defendants submitted a supplemental 510(k) application for the BIOMET HIP SYSTEM, which it described as being substantially equivalent to a previously approved hip replacement device, including all DOCUMENTS reflecting why it was believed that the trunnion for the BIOMET HIP SYSTEM should be redesigned to accommodate ceramic heads and liners.

16.   All DOCUMENTS reflecting any concerns about fixation with the BIOMET HIP SYSTEM.

17.   All DOCUMENTS that RELATE TO any failure or malfunction of the BIOMET HIP SYSTEM, whether actual, purported or potential, and whether such failure or malfunction existed before or occurred after implantation of the device.

18.   All DOCUMENTS that RELATE TO any "document to file" that reflects or refers to any change made in any BIOMET HIP SYSTEM which was not communicated to the FDA at the time the change was made.

19.   All DOCUMENTS RELATING to the design of the BIOMET HIP SYSTEM not otherwise responsive to the requests herein.

20.   All DOCUMENTS RELATING to the development of the BIOMET HIP SYSTEM not otherwise responsive to the requests herein.

21.   All DOCUMENTS that RELATE TO the design, development and manufacture of the porous coating that was used on the outside of the acetabular cup of the BIOMET HIP SYSTEM.

## CLINICAL TRIALS, TESTS AND STUDIES

22.   All DOCUMENTS that RELATE TO any preclinical or clinical trial, whether denominated as such or also if denominated as a custom device program, whether completed or not, CONCERNING the BIOMET HIP SYSTEM.

23.    All DOCUMENTS that RELATE TO any STUDY, whether completed or not, CONCERNING the BIOMET HIP SYSTEM.

24.    All DOCUMENTS that RELATE TO any TEST, whether completed or not, CONCERNING the BIOMET HIP SYSTEM.

25.    All DOCUMENTS that RELATE TO any TEST, STUDY or preclinical or clinical trial CONCERNING the BIOMET HIP SYSTEM that were considered or planned, but never started.

26.    All DOCUMENTS that RELATE TO any TEST, STUDY or preclinical or clinical trial, whether completed or not, that compares the BIOMET HIP SYSTEM to any other hip system manufactured by YOU or another manufacturer.

27.    All DOCUMENTS, including but not limited to ELECTRONIC DATABASES, that reflect the raw data from any TEST, STUDY or preclinical or clinical trial CONCERNING the BIOMET HIP SYSTEM and/or metal on metal hip devices, and any protocol(s) for such TEST STUDY or preclinical or clinical trial CONCERNING the BIOMET HIP SYSTEM and/or metal on metal hip devices.

28.    All DOCUMENTS that RELATE TO YOUR review, analysis, investigation or interpretation of any TEST, STUDY or preclinical or clinical trial CONCERNING the BIOMET HIP SYSTEM and/or metal on metal hip devices that was conducted by any third party.

29.    All DOCUMENTS that RELATE TO or that reflect analyses and/or meta-analyses of any TEST, STUDY, preclinical or clinical trial, DATA and/or pooled DATA regarding the BIOMET HIP SYSTEM and/or metal on metal hip devices, conducted internally by Defendant or by its agents, whether or not submitted to the FDA.

30.    All DOCUMENTS that RELATE TO follow-up or long term study of participants in any TEST, STUDY or clinical trial regarding the BIOMET HIP SYSTEM and/or metal on metal hip devices.

31.    DOCUMENTS sufficient to indicate the sources of funding any STUDY or TEST related to the BIOMET HIP SYSTEM.

**REGULATORY**

32.    All DOCUMENTS that RELATE TO the regulation of the BIOMET HIP SYSTEM by the United States Food and Drug Administration ("FDA"), including but not limited to the regulation of the approval, testing, sale, marketing, safety, recall, withdrawal or investigation of the BIOMET HIP SYSTEM.

33.    All DOCUMENTS that RELATE TO the regulation of the BIOMET HIP SYSTEM by any FOREIGN REGULATORY BODY, including but not limited to the regulation of the approval, testing, sale, marketing, safety, recall, withdrawal or investigation of the BIOMET HIP SYSTEM.

34.    All DOCUMENTS that reflect a complete copy of any 510(k) Premarket Notification submitted or filed with the FDA for the BIOMET HIP SYSTEM, and any supplements or additions thereto.

35.    All DOCUMENTS that RELATE TO any 510(k) Premarket Notification submitted or filed with the FDA for the BIOMET HIP SYSTEM, and any supplements thereto.

36.    All DOCUMENTS that reflect a complete copy of any Premarket Approval (PMA) or other application for approval submitted or filed with the FDA for the BIOMET HIP SYSTEM, and any supplements or additions thereto.

37.    All DOCUMENTS that RELATE TO any Premarket Approval or other application for approval submitted or filed with the FDA for the BIOMET HIP SYSTEM, and any supplements or additions thereto.

38.    All DOCUMENTS RELATED TO any COMMUNICATION with the FDA CONCERNING the BIOMET HIP SYSTEM, including but not limited to, COMMUNICATIONS RELATED TO compliance with FDA's premarket labeling regulations, FDA premarket registration and listing requirements, the FDA's post market surveillance controls, including the Quality Systems (also known as Good Manufacturing Practices) and Medical Device Reporting regulations, and the surveillance, receipt, evaluation, analysis, and the collection or COMMUNICATION of medical device reports, including information from commercial

marketing data and postmarketing activities, as well as summaries of post-marketing medical device reports regarding the BIOMET HIP SYSTEMS.

39.    All DOCUMENTS RELATED TO any COMMUNICATION with any FOREIGN REGULATORY BODY CONCERNING the BIOMET HIP SYSTEM including but not limited to COMMUNICATIONS RELATED TO the surveillance, receipt, evaluation, analysis, and the collection or COMMUNICATION of medical device reports, including information from commercial marketing data and postmarketing activities, as well as summaries of post-marketing medical device reports regarding the BIOMET HIP SYSTEMS.

40.    All DOCUMENTS RELATED TO any COMMUNICATION with any Notified Body (as described in Article 16 of the European Medical Devices Directive) CONCERNING the BIOMET HIP SYSTEM including but not limited to COMMUNICATIONS RELATED TO the surveillance, receipt, evaluation, analysis, and the collection or COMMUNICATION of medical device reports, including information from commercial marketing data and postmarketing activities, as well as summaries of post-marketing medical device reports regarding the BIOMET HIP SYSTEMS.

41.    All DOCUMENTS RELATED TO any COMMUNICATION with any Medical Device Expert Group (MDEG) that operates under the European Medical Device regulatory system CONCERNING the BIOMET HIP SYSTEM including but not limited to COMMUNICATIONS RELATED TO the surveillance, receipt, evaluation, analysis, and the collection or COMMUNICATION of medical device reports, including information from commercial and postmarketing activities, as well as summaries of post-marketing medical device reports regarding the BIOMET HIP SYSTEMS.

42.    All ELECTRONIC DATABASES that YOU used to track YOUR BIOMET HIP SYSTEM regulatory filings with the FDA or any FOREIGN REGULATORY BODY.  This request includes any and all logs, tables or other records that identify the date, subject, purpose and participants of said COMMUNICATIONS and is limited to those portions of the DATABASE(S) relating to the BIOMET HIP SYSTEM.

43.     All DOCUMENTS, including but not limited to ELECTRONIC DATABASES, that RELATE TO or reflect contact logs or centralized records, related to the BIOMET HIP SYSTEM, including but not limited to contact logs or centralized records that summarize the date of the contact with the FDA, the purpose of the contact with the FDA, content of materials or information shared or any other information relating to the FDA contact, and/or the subject matter to be or that was discussed and any notes of such contacts.  In the event this information is maintained electronically and/or in a database, Defendant is requested to produce these materials in a form that is readable to Plaintiff's counsel.

44.     All DOCUMENTS documenting any COMMUNICATION with the FDA CONCERNING the BIOMET HIP SYSTEM including, but not limited to, documentation of telephone conferences, email, facsimiles, written correspondence, reports, memoranda and/or notes.

45.     All DOCUMENTS documenting any COMMUNICATION with any FOREIGN REGULATORY BODY CONCERNING the BIOMET HIP SYSTEM, including, but not limited to, documentation of telephone conferences, email, facsimiles, written correspondence, reports, memoranda and/or notes.

46.     All DOCUMENTS documenting any COMMUNICATION with any Notified Body (as described in Article 16 of the European Medical Devices Directive) CONCERNING the BIOMET HIP SYSTEM, including, but not limited to, documentation of telephone conferences, email, facsimiles, written correspondence, reports, memoranda and/or notes.

47.     All DOCUMENTS that RELATE TO or reflect meeting requests, briefing documents powerpoints, presentation materials and other materials RELATED TO the BIOMET HIP SYSTEM that were prepared by or on behalf of Defendant for and/or presented at any and all meetings with the FDA, FOREIGN REGULATORY BODY, or other regulatory agency.

48.     All DOCUMENTS that RELATE TO or reflect any meeting requests, briefing documents, powerpoints, presentation materials and other materials, RELATED TO the BIOMET HIP SYSTEM that were prepared by the FDA, FOREIGN REGULATORY BODY or other regulatory agency in preparation for and/or presented at any and all meetings between Defendant and the FDA, FOREIGN REGULATORY BODY or other regulatory agency.

49.    All DOCUMENTS that RELATE TO or reflect Requests for Information related to the BIOMET HIP SYSTEM received from the FDA. In YOUR response, please produce the formal Request for Information as well as any supporting DOCUMENTS, correspondence, attachments or other materials RELATED thereto.

50.    All DOCUMENTS that RELATE TO or reflect minutes, notes or other documents memorializing meetings with the FDA or any FOREIGN REGULATORY BODY related to the BIOMET HIP SYSTEM.

51.    All DOCUMENTS that reflect transcripts or recordings of meetings with the FDA or any FOREIGN REGULATORY BODY or other regulatory agency regarding the BIOMET HIP SYSTEM.

52.    All DOCUMENTS that RELATE TO or reflect any discussion or submission between Defendant and any state government regulatory agency or any state medical society CONCERNING the safety of the BIOMET HIP SYSTEM.

53.    All DOCUMENTS that RELATE TO or reflect the hiring or retention by Defendant or on Defendant's behalf, of any public relations firm or law firm specializing in drug regulatory practices to participate in, orchestrate, organize, evaluate or advise YOU CONCERNING any discussions with the FDA that RELATE TO the BIOMET HIP SYSTEM, and produce all DOCUMENTS regarding said engagement, including but not limited to correspondence, memoranda, briefing books, questions and answers, talk papers, scripts for telephone calls, creation of special advisory or consulting boards, retention of scientific or medical researchers, advisors or experts and other such public relations strategies.

54.    All DOCUMENTS that RELATE TO or reflect any COMMUNICATION exchanged between Defendant and persons acting on Defendant's behalf regarding communication with the FDA CONCERNING the BIOMET HIP SYSTEM.

55.    All DOCUMENTS that RELATE TO or reflect COMMUNICATIONS between Defendants and the FDA regarding compliance notices, deviation reports, deficiency reports, warning letters, and/or violation notices or the like CONCERNING the BIOMET HIP SYSTEM.

56.    All DOCUMENTS that RELATE TO or reflect COMMUNICATIONS between Defendants and any FOREIGN REGULATORY BODY regarding compliance notices, deviation reports, deficiency reports, warning letters, and/or violation notices or the like CONCERNING the BIOMET HIP SYSTEM.

57.    All DOCUMENTS relating to any supplemental 510(k) submission for the BIOMET HIP SYSTEM, including but not limited to the submission of revisions to the Indications for Use and the Instructions for Use (IFU) and what current clinical practice was being reflected in such updated IFU's.

58.    All DOCUMENTS relating to Biomet's Corporate Compliance Agreement(s) and Code of Business Conduct and Ethics.

59.    All DOCUMENTS concerning any payments to physicians, key opinion leaders, consultants and others related to the promotion, education, and/or training of physicians concerning the use of the Biomet Hip System.  These documents shall also include any description of the purpose of the payment and the time involved.

60.    All DOCUMENTS maintained in any and all custodial files in connection with any regulatory related documents including but not limited to the custodial files entitled "Regulatory Compliance" and "Corrective Action Department."

**MANUFACTURE**

60.    All DOCUMENTS that RELATE TO the manufacturing specifications, process, and quality assurance for the BIOMET HIP SYSTEM, including but not limited to those contained in the Device Master Record (21 C.F.R. § 820.181), Device History Record (21 C.F.R. § 820.184), Production and Process Controls (21 C.F.R. § 820.70), Nonconforming Products Reports (21 C.F.R. § 820.90), Quality Audits (21 C.F.R. § 820.22), Supplier Audit Reports (21 C.F.R. § 820.50), Quality System Records (21 C.F.R. § 820.186), Quality Management Records (21 C.F.R. § 820.20), and Complaint Files (21 C.F.R. § 820.198); and the Standard Operating Procedures ("SOPs"),

Manufacturing Procedures, Inspection Procedures or other documents that are referenced or called-out in these records.

61.     All DOCUMENTS that RELATE TO any FDA inspection of any facility where the BIOMET HIP SYSTEM, or any component thereof, were manufactured, including but not limited to any FDA-483 Plan Investigation Report, any response thereto, and any internal COMMUNICATION regarding the inspection.

62.     DOCUMENTS sufficient to identify where each component of the BIOMET HIP SYSTEM has ever been manufactured.

63.     All DOCUMENTS that RELATE TO the development of and/or compliance with good manufacturing processes or International Organization for Standardization (ISO) standards with respect to the BIOMET HIP SYSTEM.

**STANDARD OPERATING PROCEDURES/GUIDELINES**

64.     All DOCUMENTS that reflect Standard Operating Procedures, guidelines or the like that RELATE TO the development, design, STUDY or TESTING, manufacture, sale, marketing, distribution, promotion, training, implantation, explantation, preservation of explanted devices, recall, claims handling, contacts with consumers about their BIOMET HIP SYSTEM implant, settlement of claims, or COMMUNICATIONS with healthcare providers, the public or the FDA or other regulatory authorities RELATED TO the BIOMET HIP SYSTEM.

65.     All DOCUMENTS that reflect any codes of conduct and/or ethical standards promulgated, adopted or followed by Defendant or by any trade organization of which Defendant is a member, and that was in effect at the time the Defendant was selling the BIOMET HIP SYSTEM. For purposes of this request, "code of conduct" is defined as a set of rules or protocols that explain how Defendant, its employees and/or agents should conduct themselves.

**SALES, MARKETING, DISTRIBUTION AND SUPPLY**

66. DOCUMENTS sufficient to IDENTIFY each of YOUR sales representatives or the like who sold the BIOMET HIP SYSTEM, including also their sales territory and related dates of promotion. For each PERSON IDENTIFIED, produce a copy of the following: (a) their custodial file; (b) personnel file; (c) call notes/sheets; (d) IMS data; (e) customer notes; (f) weekly sales notes; (g) customer belief notes; (h) tracking notes; (i) postings on Defendant's message boards; and/or (j) video files.

67. DOCUMENTS sufficient to IDENTIFY any third party sales representatives or the like (both natural persons and entities) who or which sold the BIOMET HIP SYSTEM, including also their sales territory and related dates of promotion. For each PERSON IDENTIFIED, produce a copy of the following: (a) their custodial file; (b) personnel file; (c) call notes/sheets; (d) IMS data; (e) customer notes; (f) weekly sales notes; (g) customer belief notes; (h) field or ride-along reports; (i) surgical observation reports; (j) Medical Device Reports and /or medical device reports and/or (k) tracking notes.

68. All DOCUMENTS that RELATE TO any COMMUNICATION between YOU and any PERSON that sold, distributed or promoted the BIOMET HIP SYSTEM.

69. All DOCUMENTS that RELATE TO contracts or agreements between YOU and any PERSON that sold, distributed or promoted the BIOMET HIP SYSTEM, including Form 1099's.

70. All DOCUMENTS that RELATE TO payments from YOU to any PERSON that sold, distributed or promoted the BIOMET HIP SYSTEM.

71. All DOCUMENTS that RELATE TO or reflect sales call notes/sheets, customer notes, weekly sales notes, customer belief notes and/or tracking notes related to the marketing, sale, distribution or promotion of the BIOMET HIP SYSTEM.

72. DOCUMENTS sufficient to IDENTIFY each of YOUR third party suppliers or distributors of BIOMET HIP SYSTEM, including also their supply or distribution territory and related dates of supply or distribution.

73. All DOCUMENTS that RELATE TO any COMMUNICATION between YOU and any PERSON that supplied or distributed the BIOMET HIP SYSTEM.

24

74.    All DOCUMENTS that RELATE TO contracts or agreements between YOU and any PERSON that supplied or distributed the BIOMET HIP SYSTEM.

75.    All DOCUMENTS that RELATE TO or reflect any and all minutes, agendas, brochures, memoranda, correspondence, video files, voice mail blast messages and/or other documents RELATING TO meetings of any trade group or other group or association which were supported or sponsored by Defendant CONCERNING the BIOMET HIP SYSTEM.

76.    All DOCUMENTS that RELATE TO or reflect information or materials intended to market or promote for sale or purchase the BIOMET HIP SYSTEM to or through healthcare providers or consumers, including but not limited to sales brochures, selling or promotional aids, instructional materials to sales representatives, website materials, videos or webcasts, literature, scripts, voice mail blasts, questions and answers or FAQ.

77.    All DOCUMENTS that RELATE TO or reflect any healthcare provider or direct-to-consumer advertisements or promotion of the BIOMET HIP SYSTEM, including: (a) dates such advertising was conducted; (b) specific media vehicles used to conduct such advertising; (c) names and addresses of all advertising agencies utilized by Defendant that were/are involved in said advertising; (d) drafts of the advertisements; (e) final versions of the advertisements; (f) internal communications regarding the advertisements; (g) correspondence related to the advertisements; and/or (h) FDA approvals, disapprovals or revisions of the advertisements.

78.    All DOCUMENTS that RELATE TO or reflect tangible things or other materials ever provided by Defendant to physicians or pharmacies to promote the BIOMET HIP SYSTEM, including but not limited to notepads, calendars, office supplies, meals, promotional materials, financial contributions, product descriptions, product literature, books regarding the BIOMET HIP SYSTEM, and other such promotional materials.

79.    All DOCUMENTS that RELATE TO or reflect each and every purchase by Defendant or on Defendant's behalf of published literature, to be distributed to healthcare providers or consumers, supporting the use of the BIOMET HIP SYSTEM.

25

80. All DOCUMENTS that RELATE TO or reflect press releases, media statements and/or alerts issued by Defendant or on Defendant's behalf with respect to the BIOMET HIP SYSTEM, including but not limited to all draft and original versions of the same.

81. All DOCUMENTS that RELATE TO warranties, representations, and promotional statements made by Defendant regarding the safety, efficacy or performance of any BIOMET HIP SYSTEM.

82. All DOCUMENTS that RELATE TO or reflect training materials for the training of sales representatives, distributors or the like employed by Defendant or by third parties to promote the BIOMET HIP SYSTEM, including but not limited to instructions, memorandum, powerpoints, emails, newsletters, films, scripts, questions and answers, alerts, role plays, videos, voice mail blasts, webcasts, pictures, scientific or medical information or other materials or information.

83. All DOCUMENTS that RELATE TO or reflect marketing or sales strategies or plans that CONCERN the BIOMET HIP SYSTEM, including the use of focus groups.

84. DOCUMENTS sufficient to show, by year, the sales, sales volume, market share, revenue and profits attributable to the BIOMET HIP SYSTEM both in the United States and worldwide.

85. All DOCUMENTS that RELATE TO projected or hypothetical sales, sales volume, market share, revenue and profits attributable to the BIOMET HIP SYSTEM both in the United States and worldwide.

86. All DOCUMENTS that RELATE TO or reflect the market share percentage of the various BIOMET HIP SYSTEM, including but not limited to all DOCUMENTS reflecting any analyses of market acceptance of the original, successor and derivative BIOMET HIP SYSTEM.

87. All DOCUMENTS that RELATE TO or reflect the sales volume (physical and monetary sales amount) of each Distributor of the Biomet Hip System for the RELEVANT TIME PERIOD.

26

88.   All DOCUMENTS that RELATE TO the name, address, and hospital or facility of each surgeon who has implanted a Biomet Hip System including the number of Biomet Hip Systems implanted by each surgeon and the success or failure rate of each surgeon concerning their implantation of Biomet Hip Systems.

89.   All DOCUMENTS that RELATE TO procedures, policies or practices for responding to negative publications about the BIOMET HIP SYSTEM.

90.   All DOCUMENTS that RELATE TO or reflect Defendant's annual budget for field sales force costs and activities relating to the promotion of the BIOMET HIP SYSTEM.

## DEVELOPERS, KEY OPINION LEADERS AND OUTSIDE CONSULTANTS

91.   All DOCUMENTS that RELATE TO Key Opinion Leaders, Knowledge Leaders, Thought Leaders or the like CONCERNING the BIOMET HIP SYSTEM, including but not limited to their development, retention, training, funding, duties, work performed and compensation.

92.   All DOCUMENTS that RELATE TO COMMUNICATIONS with Key Opinion Leaders, Knowledge Leaders, Thought Leaders or the like CONCERNING the BIOMET HIP SYSTEM.

93.   All DOCUMENTS that RELATE TO payments, both direct and indirect, from YOU to a physician or to any entity or organization with which YOU believe he/she was affiliated with at the time regarding the BIOMET HIP SYSTEM.

94.   All Consultant Agreements and Knowledge Leader Agreements related to the BIOMET HIP SYSTEM and/or metal on metal hip implants/systems.

95.   All DOCUMENTS that RELATE TO COMMUNICATION between YOU and any individual part of a design team or any individual who took part in in designing the BIOMET HIP SYSTEM.

96.     All DOCUMENTS that RELATE TO COMMUNICATION between YOU and any individual part of a design team or any individual who took part in in designing, reviewing, writing and editing the BIOMET HIP SYSTEM Surgical Technique manual.

97.     All DOCUMENTS that RELATE TO payments from YOU to any All DOCUMENTS that RELATE TO COMMUNICATION between YOU and any individual part of a design team or any individual who took part in in designing, reviewing, writing and editing the BIOMET HIP SYSTEM Surgical Technique manual.

98.     All DOCUMENTS that RELATE TO or reflecting contracts between YOU and any individual part of a design team or any individual who took part in designing, reviewing, writing and editing the BIOMET HIP SYSTEM Surgical Technique manual.

99.     All Surgeon Designer Agreements concerning the BIOMET HIP SYSTEM.

100.    All contracts with third parties in connection with failed and/or returned BIOMET HIP SYSTEMS for the purpose of storage, research, examination, inspection and/or testing.

101.    DOCUMENTS sufficient to IDENTIFY all non-employee medical doctors retained, paid or compensated in any other way (directly or indirectly), by or on behalf of Defendant to present materials and information and/or to use the BIOMET HIP SYSTEM (including as well any precursors or prototypes of said Systems and any devices implanted in patients denominated as a "custom device"). Please note that this request includes those non-employee medical doctors whose may have been secured through a third party whose function was to organize Continuing Medical Education programs and/or any other programs or presentations at which information on the BIOMET HIP SYSTEM was presented.

102.    DOCUMENTS sufficient to IDENTIFY any and all external consultants retained by Defendant with respect to the BIOMET HIP SYSTEM, including but not limited to any of the following:

a.      The development, design or manufacture of the BIOMET HIP SYSTEM.

b.      The design or conduct of any STUDIES, TESTS or preclinical or clinical trials CONCERNING the BIOMET HIP SYSTEM;

c.  The analysis or evaluation of adverse events, medical device reports or device failures for the BIOMET HIP SYSTEM;

d.  The sale or marketing of the BIOMET HIP SYSTEM in the United States.

e.  The distribution of the BIOMET HIP SYSTEM in the United States.

f.  The market potential for the BIOMET HIP SYSTEM, including targeted audiences of physicians or others.

g.  The training or supervision of doctors implanting the BIOMET HIP SYSTEM.

h.  The investigation of any failure or safety concerns that RELATE TO the BIOMET HIP SYSTEM.

i.  A recall of the BIOMET HIP SYSTEM.

j.  The investigation, communication or resolution of any claims or potential claims regarding the BIOMET HIP SYSTEM.

103.  All DOCUMENTS that reflect notes and/or transcripts made of meetings with any and all external consultants retained to consult on the BIOMET HIP SYSTEM.

104.  All DOCUMENTS that RELATE TO or reflect any COMMUNICATIONS between Defendant and any and all external consultants retained to consult on the BIOMET HIP SYSTEM.

105.  All DOCUMENTS that RELATE TO or reflect any opinion by a physician, scientist, or medical or scientific expert employed by, retained by, consulting for or otherwise acting for or in concert with Defendant, regarding the BIOMET HIP SYSTEM, including but not limited to opinions intended for Defendant's internal use, reports prepared in legal proceedings (exclusive of reports by retained non-testifying experts), opinions expressed in depositions or trials, reports submitted to scientific journals, opinions expressed at medical conferences, and opinions provided as testimony, reports or statements to the FDA or any advisory committee thereof.

106.  All DOCUMENTS that RELATE TO or reflect any financial payments, contributions or support, CONCERNING the BIOMET HIP SYSTEM, provided by Defendant to any physician, scientist, medical or scientific expert, or any institution, agency or entity with which said individual is affiliated.

107.    All DOCUMENTS that RELATE TO or reflect Defendant's retention of persons in any medical discipline to study, assess or analyze the safety of the BIOMET HIP SYSTEM.

108.    All interactions or communications with regard to national or international orthopedic registries, including but not limited to the American Joint Replacement Registry (otherwise known as AJJR) and the International Consortium of Orthopedic Registries (otherwise known as ICOR).

### IMPLANTATION, INSTRUCTIONS, TRAINING AND FOLLOW-UP

109.    An actual unopened and unused exemplar of any BIOMET HIP SYSTEM, along with all packaging and accompanying documentation generally provided with such device.

110.    All DOCUMENTS that RELATE TO or reflect any packaging and accompanying documentation generally provided with the BIOMET HIP SYSTEM devices.

111.    All DOCUMENTS that RELATE TO or reflect any training materials, manuals or instructions or other information CONCERNING the implantation BIOMET HIP SYSTEM for such products sold in the United States, including but not limited to instruction manuals, powerpoints, ELECTRONIC MEDIA and videos, webcasts or pictures.

112.    All DOCUMENTS that RELATE TO or reflect any training materials, manuals or instructions or other information CONCERNING implantation of the BIOMET HIP SYSTEM for such products sold outside the United States, including but not limited to instruction manuals, powerpoints, ELECTRONIC MEDIA and videos, webcasts or pictures.

113.    All DOCUMENTS provided to YOUR employees or other outside agents that RELATE TO or reflect any training materials, manuals or instructions or other information CONCERNING implantation of the BIOMET HIP SYSTEM.

114.    All DOCUMENTS that RELATE TO the management or care of patients implanted with any BIOMET HIP SYSTEM.

115.    All DOCUMENTS that RELATE TO or reflecting actual or projected numbers of implanted BIOMET HIP SYSTEM devices in the United States, outside the United States or both.

116.   All DATABASES REFLECTING or CONCERNING a registry or the like of implanted or removed BIOMET HIP SYSTEM devices, including any DATABASES identifying or reflecting the patient, where the procedure took place, the date of the procedure, the presence of any representative of Defendant, and other such information.

## CLINICAL AND HEALTH CARE PROVIDER COMMUNICATIONS

117.   All DOCUMENTS that RELATE TO or reflect any COMMUNICATION between Defendant and doctors or consumers CONCERNING the BIOMET HIP SYSTEM.

118.   All surgical and/or medical records provided by physicians conducting surgeries to implant or explant a BIOMET HIP SYSTEM.

119.   All DOCUMENTS that RELATE TO any COMMUNICATION to sales representatives or the like REGARDING how to respond to questions from patients, physicians, hospitals or other medical providers regarding the BIOMET HIP SYSTEM.

120.   All DOCUMENTS that RELATE TO or reflect any and all Dear Doctor or Dear Healthcare Provider letters or the like CONCERNING the BIOMET HIP SYSTEM, both within and outside the United States.  This request includes but is not limited to the Dear Doctor and Dear Healthcare Provider letters themselves as well as all drafts of the letters, memoranda RELATED TO the letters, notes of meetings and/or telephone conferences CONCERNING the letters and any COMMUNICATIONS with the FDA or any FOREIGN REGULATORY BODY regarding the content or approval of the letters.

121.   All DOCUMENTS that RELATE TO or reflect any COMMUNICATIONS between Defendant and any medical association CONCERNING any adverse events or device failures reported with regard to the BIOMET HIP SYSTEM, regardless of causality.  The term "medical association", as used in this request, refers to trade groups as opposed to individual medical practices.

122.   All DOCUMENTS that RELATE TO or reflect any unpublished reports, speeches, data compilations, clinical observations or other communications made by Defendant or on Defendant's behalf CONCERNING the BIOMET HIP SYSTEM.

123.   All DOCUMENTS that RELATE TO or reflect any COMMUNICATIONS by Defendant with any publisher, editor, author, reporter or employee of or for any lay, scientific, medical or news publication or any freelance writer CONCERNING the BIOMET HIP SYSTEM.

124.   All DOCUMENTS that RELATE TO or reflect any drafts and final or final versions of any Question & Answer documents, talking points documents or other such DOCUMENTS intended for internal use to respond to safety questions or concerns from the medical or lay public REGARDING the BIOMET HIP SYSTEM.

## COMPLAINTS AND PHARMACOVIGILANCE

125.   All DOCUMENTS that RELATE TO or reflect any "Medical Device Report" CONCERNING the BIOMET HIP SYSTEM.

126.   All DOCUMENTS that RELATE TO or reflect any "complaint file" (as that term is used in 21 C.F.R. § 820.198) CONCERNING the BIOMET HIP SYSTEM, including but not limited to all written and oral complaints regarding any BIOMET HIP SYSTEM, all determinations CONCERNING the necessity of investigating those complaints, all records of any investigations of those complaints, and all records referring or relating to any decision not to investigate those complaints.

127.   All DOCUMENTS that RELATE TO any "adverse event" (as that term is used in 21 C.F.R. § 803.50 *et seq.*) or medical device report or medical device failure CONCERNING the BIOMET HIP SYSTEM, including reports received by YOU and reports submitted by YOU to FDA.

128.   All DOCUMENTS that RELATE TO or reflect any of YOUR policies, procedures, guidelines, SOPs, handbooks or manuals CONCERNING product safety, product surveillance or

risk management. This request includes but is not limited to any such DOCUMENTS provided to Distributors or Sales Representatives, including Third Parties.

129.  All DOCUMENTS that RELATE TO or reflect COMMUNICATIONS with the FDA CONCERNING the safety of the BIOMET HIP SYSTEM or any information regarding adverse events or Medical Device Reports or Medical Device Failures CONCERNING those systems.

130.  All DOCUMENTS that RELATE TO or reflect COMMUNICATIONS with any FOREIGN REGULATORY BODY CONCERNING the safety of the BIOMET HIP SYSTEM or any information regarding adverse events or Medical Device Reports or Medical Device Failures CONCERNING those systems.

131.  All DOCUMENTS that reflect reports or related documentation provided to the FDA CONCERNING the safety of the BIOMET HIP SYSTEM or any information regarding adverse events or Medical Device Reports or Medical Device Failures CONCERNING those systems.

132.  All DOCUMENTS that reflect reports or related documentation provided to any FOREIGN REGULATORY BODY CONCERNING the safety of the BIOMET HIP SYSTEM or any information regarding adverse events or Medical Device Reports or Medical Device Failures CONCERNING those systems.

133.  All DATABASES maintained by you CONCERNING domestic or international adverse events or Medical Device Reports or Medical Device Failures CONCERNING the BIOMET HIP SYSTEM, including the underlying medical and other records maintained by you for such adverse events or reports.

**INVESTIGATION**

134.  All DOCUMENTS that RELATE TO or reflect data from the National Joint Registry (NJR) of England and Wales regarding the BIOMET HIP SYSTEM.

135.  All DOCUMENTS that RELATE TO or reflect any COMMUNICATION between YOU and the National Joint Registry (NJR) of England and Wales regarding the BIOMET HIP SYSTEM.

136.   All DOCUMENTS that RELATE TO or reflect data from the Australian Orthopaedic Association's National Joint Registry regarding the BIOMET HIP SYSTEM.

137.   All DOCUMENTS that RELATE TO or reflect any COMMUNICATION between YOU and the Australian Orthopaedic Association's National Joint Registry regarding the BIOMET HIP SYSTEM.

138.   All DOCUMENTS that RELATE TO YOUR use of outside medical advisors or any other third-party to provide product quality, safety and reliability assessments CONCERNING the BIOMET HIP SYSTEM.

139.   All DOCUMENTS that RELATE TO or reflect any statistical or actuarial study of probabilities of BIOMET HIP SYSTEM failures or revision surgeries, including but not limited to failures or revision surgeries associated with any potential or actual manufacturing or design flaws or defects identified by YOU in any BIOMET HIP SYSTEM.

140.   All DOCUMENTS that RELATE TO or reflect any analysis of the failure rates of any BIOMET HIP SYSTEM, including without limitation DOCUMENTS RELATING TO any consideration of the clinical consequences of the failures.

141.   All DOCUMENTS that RELATE TO the review, examination, inspection and/or analysis of the histories of patients who received a BIOMET HIP SYSTEM.

142.   All DOCUMENTS that RELATE TO problems with the porous coating of the BIOMET HIP SYSTEM, including all DOCUMENTS relating to any issue of the porous coating beads coming loose.

143.   All DOCUMENTS that RELATE TO or reflect any COMMUNICATION between YOU and any scientist, doctor or researcher regarding failure rates, failure mechanisms, design flaws or defects, or manufacturing defects related to the BIOMET HIP SYSTEM.

**WARNINGS AND POTENTIAL RECALLS**

144.   All DOCUMENTS that RELATE TO or reflect warnings, notices or advisories CONCERNING the BIOMET HIP SYSTEM.

145.   All DOCUMENTS that RELATE TO or reflect any COMMUNICATION with the FDA or any FOREIGN REGULATORY BODY CONCERNING any warnings, notices, or advisories CONCERNING the BIOMET HIP SYSTEM.

146.   All DOCUMENTS that RELATE TO or reflect any COMMUNICATION with any healthcare providers, physicians, patients or other consumers CONCERNING any warnings, notices or advisories associated with the BIOMET HIP SYSTEM.

147.   All DOCUMENTS that RELATE TO any meeting at which a proposed recall, advisory, safety alert, field action or market withdrawal that RELATE TO the BIOMET HIP SYSTEM was discussed, including notes, minutes, and draft recall notices.

148.   All DOCUMENTS that RELATE TO or reflect any proposed recall, advisory, safety alert, field action or market withdrawal of the BIOMET HIP SYSTEM.

149.   All DOCUMENTS that RELATE TO any proposed or instituted cessation of the manufacture or marketing of the BIOMET HIP SYSTEM.

150.   All DOCUMENTS that RELATE TO or reflect any potential recall or market withdrawal for the BIOMET HIP SYSTEM.

151.   All DOCUMENTS that RELATE TO or reflect press releases or other information provided press or other media regarding any warnings, notices, or advisories CONCERNING the BIOMET HIP SYSTEM.

## CORPORATE GOVERNANCE

152.   All DOCUMENTS that RELATE TO or reflect minutes of meetings of YOUR Board of Directors (or any committee or like group RELATED TO the Board of Directors), or the Board of Directors of any company that directly or indirectly owns YOU, CONCERNING the BIOMET HIP SYSTEM.

153.   All DOCUMENTS that RELATE TO or reflect statements made by Defendant or on Defendant's behalf to its stockholders in which any of the BIOMET HIP SYSTEM is referenced. This includes, but is not limited to, Defendant's annual or quarterly reports.

154.   All DOCUMENTS that reflect any minutes and/or reports of Board of Directors meetings (or their committees or like group) which RELATE TO or refer to the BIOMET HIP SYSTEM.

155.   All DOCUMENTS that RELATE TO or reflect COMMUNICATIONS with financial analysts or investors CONCERNING the role of the BIOMET HIP SYSTEM in Defendant's financial or business prospects, including any transcripts, presentations or documents CONCERNING any analyst conference, call, or business briefing.

156.   All DOCUMENTS that reflect Defendant's year-end financial statements for the years YOU marketed the BIOMET HIP SYSTEM, including:

(a) quarterly reports for the current fiscal year, including 10-K and 10-Q forms;

(b) all of YOUR filings with the National Association of Securities Dealers;

(c) gross sales of the BIOMET HIP SYSTEM for each year; and

(d) net profits attributable to the sale of the BIOMET HIP SYSTEM including but not limited to by State of sale (including the District of Columbia, Puerto Rico, and the Virgin Islands) for each year you marketed the BIOMET HIP SYSTEM.

157.   All DOCUMENTS that reflect YOUR annual report to shareholders for the years you marketed the BIOMET HIP SYSTEM.

158.   DOCUMENTS sufficient to identify the DEPARTMENT and individuals responsible for managing compliance with YOUR Corporate Integrity Agreements.

## **EXPLANTATION**

159.   All DOCUMENTS that RELATE TO any proposed or instituted collection, retrieval or storage by YOU (or any one acting on YOUR behalf) from physicians, hospitals, sales

representatives, or device suppliers of any BIOMET HIP SYSTEM which had already been implanted.

160.    All DOCUMENTS that RELATE TO any proposed or instituted tests, analysis, evaluations or investigations of explanted or withdrawn BIOMET HIP SYSTEM which were returned to, or collected by, you.

161.    All DOCUMENTS that RELATE TO the disposal by YOU or anyone acting on YOUR behalf of explanted or withdrawn BIOMET HIP SYSTEM returned to, or collected by, YOU.

162.    All DOCUMENTS that RELATE TO or reflecting any visual, microscopic, Scanning-Electron Microspy or other scientific or medical examination, inspection or analysis of any explanted BIOMET HIP SYSTEM device or any RELATED tissues or records CONCERNING such device.

163.    All DOCUMENTS that RELATE TO or reflecting the actual or projected numbers of explanted BIOMET HIP SYSTEM devices.

## CLAIMS AND SETTLEMENT

164.    All DOCUMENTS that RELATE TO notice of claims, claims projections, loss estimates or risk management that RELATE TO any BIOMET HIP SYSTEM.

165.    All DOCUMENTS that reflect general liability, comprehensive general liability, or product liability insurance policy (and any other insurance policy that you purchased or on which you are a named insured, including policies purchased by related corporate entities) which you believe may provide coverage for any personal injury and/or product liability claim arising from the implantation of any BIOMET HIP SYSTEM device, including all excess layers.

166.    All DOCUMENTS that RELATE TO or reflect any indemnity agreement, agreement to assume liability, agreement to assume the defense or any other such agreement between YOU and any other person or entity regarding or pertaining to claims for injuries alleged as a result of implantation of any BIOMET HIP SYSTEM device.

167.    All DOCUMENTS that reflect charts or schedules of layers of insurance or self-insured retention which you believe may provide coverage for any personal injury and/or product liability claim arising from the implantation of any BIOMET HIP SYSTEM device.

168.    All DOCUMENTS that RELATE TO or reflect any disputes or reservations of rights as to coverage (and any other insurance policy which you believe may provide coverage) for any personal injury and/or product liability claim arising from the implantation of any BIOMET HIP SYSTEM device.

169.    All DOCUMENTS that RELATE TO any relationship you have with any third-party retained by BIOMET or their counsel to assist in payment of medical expenses or other economic costs of patients with potential claims or settlements CONCERNING the BIOMET HIP SYSTEM, including but not limited to contracts or agreements, COMMUNICATIONS regarding any potential contracts or agreements, and any other COMMUNICATIONS CONCERNING the BIOMET HIP SYSTEM, including but not limited to powerpoint presentations, meeting notes and emails.

170.    All DOCUMENTS that RELATE TO any actual or attempted compensation or resolution of claims for patients implanted with an BIOMET HIP SYSTEM device, including but not limited to standard operating procedures, guidelines, protocols or the like, form COMMUNICATIONS with patients or doctors and related or accompanying DOCUMENTS, and internal DOCUMENTS or COMMUNICATIONS CONCERNING such compensation or resolution.

## OTHER CATEGORIES

171.    All DOCUMENTS that YOU identify or are asked to identify in response to any Plaintiffs' interrogatories propounded in these coordinated proceedings.

172.    All ELECTRONIC DATABASES or ELECTRONICALLY STORED MEDIA that RELATE TO or reflect the following subject areas that CONCERN the BIOMET HIP SYSTEM, to the extent not response to the other requests made herein:

a.      payments made to physicians or healthcare providers;

b.      clinical trial tracking, management or data;

c.      sales call tracking or contacts with physicians or other individual health care providers or institutions;

d.      distribution of samples;

e.      management or repository of publications;

f.      product complaints;

g.      marketing, advertising or promotional materials;

h.      information requests and/or questions submitted by physicians or healthcare providers;

i.      tracking or management of communications with, payments to or activities of thought leaders, consultants or institutions;

j.      label changes;

k.      marketing activities; and

l.      approval of promotional, advertising or marketing materials.

173.    All DOCUMENTS that RELATE TO any criminal proceedings and/or other proceedings involving reprimand, penalty or fine imposed that RELATE TO the BIOMET HIP SYSTEM in which Defendant or anyone acting on Defendant's behalf has been involved.

174.    All DOCUMENTS that RELATE TO or reflect general media articles discussing the BIOMET HIP SYSTEM.  For purposes of this request, the term "general media article" refers to articles that appear in non-medical and/or non- scientific journals, magazines or periodicals.

175.    All DOCUMENTS that RELATE TO or reflect medical or scientific articles, in Defendant's possession, custody or control discussing the BIOMET HIP SYSTEM.

176.    All DOCUMENTS that RELATE TO the BIOMET HIP SYSTEM sent or received in your capacity as a member of or financial supporter of any other organization and/or lobby. This

request is limited to organizations and/or lobbies that you are a member of in your capacity as a manufacturer, marketer and/or distributor hip implants.

177.   All DOCUMENTS that RELATE TO or reflect any expenditures, whether monetary payments, in-kind payments or gifts, made on lobbying efforts that RELATE TO YOUR hip implant business.

178.   All DOCUMENTS that reflect depositions transcripts or recordings of corporate representatives in previous lawsuits or proceedings regarding any type of claims CONCERNING the BIOMET HIP SYSTEM.

179.   All DOCUMENTS that reflect Defendant's witness lists in previous lawsuits or proceedings regarding any type of claims that RELATE TO the BIOMET HIP SYSTEM.

180.   All DOCUMENTS that reflect Defendant's exhibit lists in previous lawsuits or proceedings regarding any type of claims that RELATE TO the BIOMET HIP SYSTEM.

181.   All DOCUMENTS that reflect Defendant's expert deposition transcripts or opinions submitted in previous lawsuits or proceedings regarding any type of claims CONCERNING the BIOMET HIP SYSTEM.

182.   ALL DOCUMENTS produced by YOU in *Benson v Biomet, Inc.* (ED Wa 2:12-cv-05131).

183.   ALL DOCUMENTS produced by YOU in *Faber v Biomet, Inc.* (ED NY 1:12-cv-00783).

184.   ALL DOCUMENTS identified by YOUR keyword search employed in the Faber v Biomet action BEFORE said documents were limited and constricted using subsequent predictive coding searches.

Dated: February 7, 2013

Respectfully submitted,


By:/s/ W. Mark Lanier
W. Mark Lanier
LANIER LAW FIRM, PC
6810 FM 1960 West
Houston, Texas  77069
Phone: (713) 659-5200
Fax: (713) 659-2204
wml@lanierlawfirm.com

Thomas Anapol
ANAPOL SCHWARTZ
1710 Spruce Street
Philadelphia, PA  19103
Phone: (215) 790-4572
Fax: (215) 875-7707
tanapol@anapolschwartz.com

PLAINTIFFS' LEAD COUNSEL



## CERTIFICATE OF SERVICE

I certify that Plaintiffs' First Request for the Production of Documents to Defendants was served

on Defendants' counsel of record, John Winter, via electronic mail on February 7, 2013.


/s/ W. Mark Lanier
W. Mark Lanier