# EXHIBIT M

1

C4p9mooc

1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
2
3  MONIQUE DA SILVA MOORE, ET
3  AL.,
4
4              Plaintiffs,
5
5        v.                        11 CV 1279 (ALC) (AJP)
6
6  PUBLICIS GROUPE SA, ET AL.,
7
7              Defendants.
8
8  ------------------------------x
9                                  New York, N.Y.
9                                  April 25, 2012
10                                 2:06 p.m.
10
11 Before:
11
12              HON. ANDREW J. PECK
12
13                                 Magistrate Judge
13
14                      APPEARANCES
14
15 SANFORD, WITTELS & HEISLER, LLP
15      Attorneys for Plaintiffs
16 BY:  STEVEN LANCE WITTELS
16        DEEPIKA BAINS
17        SIHAM NURHUSSEIN
18 JACKSON LEWIS LLP
18      Attorneys for Defendant MSLGroup
19 BY:  BRETT M. ANDERS
19        JEFFREY W. BRECHER
20
20 MORGAN, LEWIS & BOCKIUS LLP
21      Attorney for Defendant Publicis Groupe SA
21 BY:  PAUL C. EVANS
22
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C4p9mooc

```
 1                  (In open court; case called)
 2                  THE COURT:  What are the issues?  Since you're here, I
 3      assume there must be some issues.  Let's start with the
 4      plaintiff.
 5                  Just remind me who you are.
 6                  MR. WITTELS:  Yes, your Honor.  Steven Wittels from
 7      Sanford Wittels & Heisler for the plaintiffs.
 8                  Your Honor, we would ask on behalf of plaintiffs and
 9      the class we've moved to certify that your Honor issue a stay
10      of discovery in this case until after Judge Carter has ruled on
11      the pending motions for class certification of the EPA.
12                  THE COURT:  The request is denied.
13                  Next.
14                  MR. WITTELS:  May I just explain why we think it's
15      appropriate.
16                  THE COURT:  Sure.
17                  MR. WITTELS:  The reason we believe it's appropriate
18      is because presently there is an extension of ESI discovery
19      until September.  The current discovery cutoff is June.  If
20      Judge Carter rules, and we don't know when he would rule, and
21      grants class certification of the EPA class, as well as
22      allowing us to amend the complaint, there will be a significant
23      issue with respect to the scope of discovery that defendants
24      apparently would agree to produce at that time.
25                  Given your Honor's prior rulings in this case,
```

C4p9mooc
```
 1   referencing one of them on February 8, at page 20, your Honor
 2   had decreed that the class discovery would be -- well, that the
 3   discovery would not be to all class issues but would be
 4   limited, in fact, to the seven plaintiffs we have presently.
 5   Our position was that --
 6            THE COURT:  Let me interrupt for one minute.  And just
 7   correct me if I'm wrong.
 8            You moved for collective action, but you still have
 9   not moved for class certification; is that correct?
10            MR. WITTELS:  Yes.  We need certain --
11            THE COURT:  Well, you know, we've talked about that
12   before.  And, you know, you sold this schedule to the original
13   judge, I think.  And you or one of your colleagues got very
14   upset when I thought and suggested that that date be moved.
15            You can't have it all ways from Sunday.  I understand
16   you may need some discovery for that motion.  But you've set it
17   up in a way that you're putting the cart before the horse.  And
18   you're going to have to live with that.
19            Now, meanwhile, as -- to correct one other statement
20   you made, the discovery cutoff is no longer June for obvious
21   reasons.
22            Now, you could convince me that the schedule you and
23   defendants have agreed on, which seems to be the first thing in
24   the history of the universe that you all have agreed upon and
25   haven't backtracked from, I could be convinced that that's much
```

C4p9mooc

1  too leisurely.  But I took you all at your word that that was
2  what was necessary.  I had said when we were discussing the ESI
3  protocol and all of that, that if that took longer, that I
4  wasn't going to hold you to the original discovery cutoff date.
5  What that ultimate cutoff date will be is something that we'll
6  figure out once document production has been determined.
7  Meanwhile, we'll see how long it takes for Judge Carter to deal
8  with the motion for class -- sorry, for the collective action
9  and whatever notices have to go out on that.
10        But you can't keep holding the case in limbo merely
11  because you want to take your time when it's in your interest,
12  and serve motions on your time schedule, not anyone else's.
13        So if there's anything you'd like to say so you have a
14  complete record, feel free.
15        MR. WITTELS:  Thank you.
16        May I just ask for a clarification.  When you said
17  there is no longer a June cutoff, what your Honor meant by
18  that?  Maybe I missed an order on that.
19        THE COURT:  Maybe you weren't here and you didn't read
20  the transcript.
21        But, obviously, if you're not going to have all the
22  documents under the protocol until somewhere in the
23  neighborhood of September, either you shouldn't get the
24  documents at all because it's useless, or obviously there can't
25  be a June discovery cutoff date.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C4p9mooc

```
 1              I've made that clear before.  And I really do think
 2   with the tag teaming of lawyers in this case on your side you
 3   guys got to talk to each other.
 4              MR. WITTELS:  Well, is your Honor amenable to entering
 5   an order then that extends the discovery cutoff --
 6              THE COURT:  Are you from the New York office or the
 7   California office?
 8              MR. WITTELS:  From the New York.
 9              THE COURT:  Excuse me?
10              MR. WITTELS:  New York.  What was that?
11              THE COURT:  You seem to be picking up the infection of
12   your colleague in California that you don't seem to know how we
13   practice law in this court.
14              MR. WITTELS:  I've been practicing here for over 25
15   years.
16              THE COURT:  Good.  What don't you understand about
17   transcripts or orders?
18              MR. WITTELS:  Well, your Honor, is there -- I don't
19   think there's an order which extends the discovery cutoff
20   beyond June 30.
21              Presently there's an ESI order from your Honor
22   extending it to September 7.
23              THE COURT:  Would you like me to leave the cutoff
24   where it is and say there will be no ESI discovery?
25              You're talking nonsense.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C4p9mooc

1    MR. WITTELS:  Okay, your Honor.
2    I'd like to -- I'd like to put on the record then the
3    reasons why we believe there should be a stay, which I hadn't
4    finished.
5    The other reason is that defendants have repeatedly
6    brought up the issue of the burden of costs and insisting that
7    when they came jointly with us to your Honor with a letter in
8    March, that they wanted to wait until Judge Carter's ruling so
9    there would be no increase cost associated with the ESI given
10   that the scope of discovery wouldn't change from their
11   perspective.
12   THE COURT:  Are you prepared to make your class
13   certification now if I hold off on discovery?
14   MR. WITTELS:  No, your Honor.  We need --
15   THE COURT:  Then what's the point, counsel?
16   MR. WITTELS:  My point is that under Wal-Mart v. Dukes
17   which talks about getting discovery that shows a common
18   practice and policy; and Rossini v. Ogilvy, which is the Second
19   Circuit --
20   THE COURT:  Counsel, counsel, let me be clear, which I
21   may not have been.
22   You're asking for the Court to stay discovery while
23   your collective action motion is pending and your motion to
24   amend is pending.
25   Assume Judge Carter grants your collective action
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

C4p9mooc

1 motion and that a certain number of plaintiffs opt in, but that
2 it's not everybody who could possibly be in the class, you are
3 still saying you want to complete discovery before you file
4 your class certification motion. And then you want to do
5 everything all over again. So this makes no sense.
6           MR. WITTELS: In many of the cases, if not all that
7 I'm involved in, on terms of whether it's Title VII, whether
8 it's a collective action in a FLSA context, whether it's a
9 consumer fraud, the courts very frequently have a two-stage
10 discovery process; wherein the first phase you do class
11 discovery; and then the second phase you do merits discovery.
12 That's what we did in the Novartis case that ended up in front
13 of Judge McMahon. It was a two-stage process.
14           We need discovery in a wide basis, not limited to
15 seven plaintiffs. Because the rule in Rossini and Hnot, 228
16 F.R.D. 476, is that you need discovery showing how the
17 decisions of the corporation would affect many other employees,
18 not just the seven at issue in this case.
19           THE COURT: You have not asked for a separate class
20 discovery period. You want everything.
21           What am I missing?
22           MR. WITTELS: Well, will your --
23           THE COURT: If I were to say -- and we'll put aside
24 the collective action. And frankly, I have every reason to
25 believe Judge Carter will be deciding all your motions quickly.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C4p9mooc

1   But I can't guarantee that, obviously.  It's a guess.
2            If you were to do very limited -- well, appropriate
3   discovery solely for purposes of deciding to move for class
4   certification, what would you need?
5            Because if it's everything anyway, then what you're
6   basically saying is whether or not a class is ever certified
7   and whether or not we move for class certification, we want
8   discovery as if a class were certified.
9            MR. WITTELS:  Well, discovery must be broad enough in
10  the class discovery phase.
11           THE COURT:  Specifically.
12           Counsel, I understand.
13           Specifically tell me what you want.  You want a
14  deposition or two, or do you want all the ESI you've already
15  asked for and then some?
16           MR. WITTELS:  Well when you say "and then some," your
17  Honor, we need to evaluate the ESI.  We also would want
18  targeted --
19           THE COURT:  What's the process of staying discovery.
20  You need this regardless is what you are saying.  But you want
21  it stayed.
22           MR. WITTELS:  Well, the defendants have taken the
23  position we're not giving you any discovery beyond the seven
24  people.  If there are decisions regarding employees who are not
25  among the seven and there --

9

C4p9mooc

1             THE COURT:  If there is a company-wide policy, you are
2     entitled to that.
3             You are not entitled, because that's called blackmail
4     to convince the defendant to settle, to say I need information
5     about virtually every employee who might be in the class, which
6     obviously is extraordinarily expensive, in order to prove that
7     there is a class.  That's not what the case law says.  And
8     that's what you seem to be asking for.  While at the same time
9     saying let's stay discovery.  So I don't know if your funding
10    source has run out.  But you keep reinventing the wheel at
11    every conference.
12            MR. WITTELS:  We're asking for a stay because we're
13    being blocked in terms of our discovery.
14            THE COURT:  You're not being blocked of any legitimate
15    discovery.  And if you are, either you're being blocked by me,
16    in which case when Judge Carter rules you'll get an ultimate
17    decision on that, ultimate subject to going to the circuit at
18    the end of the case.  Or you're being blocked because you and
19    they are not agreeing.  And I have not had any discovery issue
20    brought before me on that issue.
21            MR. WITTELS:  Your Honor, because of your prior
22    rulings, the discovery -- the defendants have taken the
23    position that they don't have to produce discovery that we feel
24    should be produced under Wal-Mart, Rossini, Hnot and all of the
25    Second Circuit cases.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C4p9mooc

```
 1              THE COURT:  Counsel if you say I've ruled on it, then
 2    I've ruled.  And Judge Carter will deal with it.  Because
 3    presumably that's something that's in front of Judge Carter.
 4              MR. WITTELS:  Well what's not, I believe, in front of
 5    Judge Carter is the fact that defendants are not producing
 6    discovery beyond the seven and are now using your Honor's prior
 7    rulings to block legitimate class discovery.
 8              Therefore, they've taken the position if there is
 9    change -- and I have an e-mail from them on this point.
10              THE COURT:  First of all, is this an issue you want me
11    to rule on, or is this because -- and this is not the clean
12    Supreme Court oral argument where you get to argue and then the
13    red light comes on and you're done.  But let's try to keep one
14    issue at a time.
15              MR. WITTELS:  Well, my argument is as to why there
16    should be a stay.  And the argument I'm making is that
17    defendants, as recently as two days ago, have told us in an
18    e-mail that they won't produce any additional documents
19    relating to the complaints other than what we've already
20    produced.  And this is a quote:  If the motion to file a second
21    amended complaint is granted, we might revisit this.
22              THE COURT:  Okay.
23              MR. WITTELS:  So their position is if there is a
24    change --
25              THE COURT:  Let me ask --
```

C4p9mooc

```
 1              MR. WITTELS:  Sorry.
 2              THE COURT:  Let me ask the defendants.  Are you
 3    joining in this application as a way to save money?
 4              MR. BRECHER:  No, your Honor.  We do not join in this
 5    application.  Thank you.
 6              THE COURT:  Then my ruling stands.
 7              Anything else?
 8              MR. WITTELS:  If your Honor will not stay it, I would
 9    ask you to extend the discovery period for a year after
10    certification is granted and the reason for that is --
11              THE COURT:  I will deal with any issues on a what-if
12    when the what-if comes to pass.
13              MR. WITTELS:  Meaning if there is a ruling by Judge
14    Carter in favor of class --
15              THE COURT:  If Judge Carter gives you a class
16    certification, and discovery is necessary, and you haven't
17    slept on your rights -- you know, my question, quite seriously,
18    goes back to what we've talked about before.
19              When are you moving for class certification?
20              Right now the deadline is April 1.  You move -- sorry.
21    April 1 -- that can't be right.
22              What is the old deadline?  The one that came from
23    Judge Sullivan, if I'm remembering right, which was supposedly
24    when discovery was ending at one point.  I think it's April 1,
25    2013.  And although I looked at that date and said how on earth
```

```
C4p9mooc
```

 1  could it be that far out?
 2          MR. BRECHER:  Judge, I think that is correct.
 3          I don't have the order in front of me, the original
 4  scheduling order from Judge Sullivan.  But my recollection was
 5  after the completion of fact discovery, then there was going to
 6  be a period of expert discovery.  And then after that, class
 7  cert. motions.
 8          THE COURT:  Okay.  If that's the date you're still
 9  aiming at, I'm going to have to change the date.
10          MR. WITTELS:  We'd ask that you allow that date to
11  stand, your Honor.  It's necessary given that we're not able to
12  get --
13          THE COURT:  But then you want -- you want to make the
14  motion in April of 2013 when otherwise discovery is all over.
15  And then you want a chance, if the motion is granted, for new
16  discovery.
17          Is that what you're telling me?
18          MR. WITTELS:  No, your Honor.
19          THE COURT:  Okay.
20          MR. WITTELS:  Judge Sullivan's order number ten of
21  August 9, 2011 said the motion shall be filed no later than
22  April 1, 2013.
23          THE COURT:  I've yet to see a lawyer who files
24  something before a deadline.  But you've done lots of things
25  that other lawyers don't do.  So maybe you will.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

C4p9mooc

```
 1              Look, you'll file your motion when you file your
 2    motion.  The repercussions of that will be the repercussions of
 3    that.
 4              Or you can tell me that you're going to file your
 5    motion sooner but after you've had some significant discovery
 6    here.  And then I can think about the ramifications of it.  You
 7    can't have it both ways.
 8              So if you're sticking to the April 1, 2013 date,
 9    you're sticking to it.  What the ramifications of that will be
10    is something that we can all worry about once the motion is
11    granted, if it's granted.
12              MR. WITTELS:  All right.
13              My final request, your Honor, is that your Honor not
14    issue orders in this case until the recusal motion is decided.
15              THE COURT:  Or until the motions you want get decided.
16              You started this conference asking me to rule on
17    something.  And now you say well, I didn't win that one so why
18    don't you not rule on anything.
19              What makes sense about the way you've presented your
20    arguments?  Other than, you know, if you win, it's good, and it
21    isn't affected by the recusal motion.  But if, heaven forbid,
22    you lose, then you go to your recusal.
23              MR. WITTELS:  We feel, your Honor --
24              THE COURT:  Why didn't you just waive that argument by
25    asking me to rule on two or three things in the course of the
```

C4p9mooc
1   discussion we just had?
2            MR. WITTELS:  The reason, frankly, your Honor is I
3   believe that you were not going to grant the stays, and that we
4   requested.  And given the tenor of the case thus far, I didn't
5   want to antagonize you.
6            THE COURT:  I think you're a little late on that
7   Mr. Wittels.
8            MR. WITTELS:  Well the intent is not to antagonize the
9   Court at any time, your Honor.  I brought it up because I had
10  asked your Honor not to rule any further until it's decided.  I
11  think that's the appropriate thing to do.
12           THE COURT:  Request is denied.
13           MR. WITTELS:  Thank you.
14           THE COURT:  You waited forever to file the motion.
15  You filed a letter application for recusal.  And when I said
16  you want me to rule on that and give the defendants a chance to
17  respond to the letter, or do you want a motion?  And you took
18  another, whatever it was, two, three weeks to do the motion on
19  a schedule you set.  And now it's nothing can go on in the case
20  unless it favors you.
21           So I will rule on the recusal motion when it is fully
22  briefed and when I have time to get to it, although it will get
23  a high priority.  But at this point I'm not granting you a stay
24  of my activity on the case.  You cannot get such a stay merely
25  by making a disqualification motion.  You want to take this to

C4p9mooc

```
1    the circuit, go wherever you want.
2               Anything else from the plaintiff?
3               MR. WITTELS:  Just to respond briefly to your Honor's
4    point about dealing things under our own schedule.  We moved as
5    quickly as we could once we had a full set of facts and
6    information that we believe supported our --
7               THE COURT:  First of all, that's nonsense.  And second
8    of all, your letter had basically everything except bells and
9    whistles that was in your motion.  So, it should not have taken
10   as long as it did if you thought that the case should stop dead
11   in its tracks while the motion was pending.
12              MR. WITTELS:  We did make a motion -- as part of our
13   application in our notice of motion, we specified that your
14   Honor not make any further rulings in the case.
15              THE COURT:  Yes, but I didn't hear that you were
16   elected to the Court of Appeals or the Supreme Court.
17              Yes.  You asked for that relief.
18              MR. WITTELS:  Yes.
19              THE COURT:  You didn't bring it on by an order to show
20   cause or anything else.
21              I assume that you know that defendants wrote a letter
22   saying they would like to respond to your application.
23              Is there a reason that I should follow you and not
24   give them a chance to say anything?  Putting aside my own
25   interest in this matter?  When you've attacked my integrity.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C4p9mooc

```
 1              MR. WITTELS:  What we've attacked is the appearance of
 2   impropriety.  That's what we've attacked.
 3              THE COURT:  Yeah well, you call it what you call it.
 4              MR. WITTELS:  And no, we believe that all parties
 5   should be heard fully and completely in court.
 6              THE COURT:  Good.  Is there any reason I should be
 7   spending anymore time on this until the motion is fully
 8   briefed?
 9              MR. WITTELS:  No.
10              THE COURT:  Thank you.
11              Any issues from the defense?
12              MR. ANDERS:  Yes, your Honor.
13              If I could, I'd like to talk about the ESI process and
14   the schedule and maybe a concern or an issue that I see.
15              THE COURT:  Okay.
16              MR. ANDERS:  Under the schedule entered by the Court
17   defendants were to have provided the C set to plaintiffs by
18   April 11 with our coding designations.  We met that deadline.
19              April 23, this Monday, was the deadline for plaintiffs
20   to provide their challenges to the certain designations.  We
21   received that at 9:15 Monday night.
22              Yesterday our vendor had taken their data file,
23   incorporated it to the database, and by eleven o'clock we were
24   able to start reviewing and seeing the changes.
25              There are approximately 3300 documents where they
```

C4p9mooc

1   disagreed with our coding designations.  I spent a few hours
2   yesterday and a few hours this morning going through them.
3   I've only --
4              THE COURT:  Thirty-three out of how many documents?
5              MR. ANDERS:  3300 out of about fifteen thousand.
6              THE COURT:  So one in five?
7              MR. ANDERS:  Yes, your Honor.
8              The pace right now, in terms of -- and then on the
9   schedule itself, your Honor, we had designated April 24 to
10  April 27, Tuesday through Friday of this week, to meet and
11  confer over the disagreements and start the first iteration on
12  Saturday.
13             Based on how long it's taken to go through just 150,
14  it's going to take longer to go through the 3300.
15             But my concern, your Honor, and maybe it was addressed
16  by Mr. Wittels in his comments.  We are following your Honor's
17  rulings in making coding designations.  And it appears
18  plaintiffs still disagree with your Honor's ruling.
19             Because what I'm noticing is the vast majority of
20  documents where they disagreed with our coding designation had
21  to do with personnel decisions regarding nonplaintiffs.  For
22  example, an employee was being transferred.  A raise to a
23  different employee who is not a plaintiff.
24             But I think some of the more -- I don't want to say
25  egregious, but bizarre coding changes were somebody sent in a

C4p9mooc

1 resume looking for a position in HR. We marked as not
2 relevant. We get a response that that should be relevant. An
3 employee who is not a plaintiff, they're out-of-office
4 assistant said I will be out of on maternity leave until June
5 5, please contact so and so. We marked that as not relevant.
6 Plaintiff said that's relevant.
7        What I tried to do was start breaking it out into
8 broader categories that we can possibly address.
9        One suggestion would be allow us to go through the
10 3300.
11       Another suggestion would be maybe go through five
12 hundred. I think if we go through five hundred, we'll get a
13 good sense of categories, discuss those categories with
14 plaintiff, and then bring that to your Honor.
15       But my concern is a lot of what I'm seeing is
16 something that your Honor has already ruled on in terms of what
17 is relevant and what's not.
18       THE COURT: You all want to come back Friday? I'm on
19 trial next week. Unless -- if you want to stick around until
20 after the 3:00 conference, the trial may or may not crater
21 based on some issues that the parties raised at the last time.
22 Otherwise I'm not seeing you next week. But if we do deal with
23 500, I'm certainly willing to suffer through it on Friday.
24       Another possibility -- although it's expensive and we
25 can either do it on a loser-pay or on a 50/50 cost shift is for

C4p9mooc

1    me to give you a special master who can go through all of these
2    in light of my rulings.
3          But frankly, Mr. Wittels, if that description of these
4    documents is correct, I am not going to let you destroy the
5    predictive coding protocol process because of a difference of
6    opinion as to relevance on which I have ruled.
7          MS. BAINS:  Your Honor, I'll address this.  I don't
8    agree with Mr. Anders' characterization of our coding.
9          In fact, I got this e-mail yesterday saying that
10   plaintiffs coded things that were individual decisions who are
11   not the named plaintiffs.  So did MSL.  Many, many, times.
12   There are also at least 20 that I counted manually.  Examples
13   of the same exact document being coded as relevant and not
14   relevant.  Identical documents.  And I have some examples with
15   me.
16         THE COURT:  Well that has to be cleaned up.
17         MS. BAINS:  So I don't think that the answer is coming
18   up with broad categories because, honestly, when we went
19   through the coding we couldn't figure their coding out because
20   of all of the inconsistencies.  So it raises a lot of issues
21   with us about the accuracy of the process and the reliability
22   of the process if the coding going into it is going to be
23   inaccurate.
24         THE COURT:  That's certainly true.  How many people
25   coded, if we're seeing inconsistent coding?

C4p9mooc

```
 1              I know there's a lot of documents and there's a limit
 2   to how much a senior person can do at one time.
 3              MR. ANDERS:  Either myself, Mr. Brecher, or Tori
 4   Shevet looked at every single document.
 5              THE COURT:  Did you run any sort of de-duping?
 6   Because if they were exact duplicates and one of the three of
 7   you coded it as responsive and relevant and someone else coded
 8   it as irrelevant; or frankly, if the same person, based on
 9   tiredness or whatever, coded it the same way at different times
10   in the morning and the afternoon, you know, that certainly has
11   to be cleaned up.
12              MR. ANDERS:  Our vendor did de-dupe the set.  But from
13   what we're told, there will still be the same documents.
14              For example, attachments may appear to different
15   e-mails.  So that attachment may appear multiple times.  It was
16   de-duped but there are still certain duplicates or near
17   duplicates in there.
18              THE COURT:  Well that's certainly something that has
19   got to be cleaned up.
20              MS. BAINS:  So plaintiffs would propose that MSL
21   relook at its coding, make sure it's consistent.  We can go
22   over --
23              THE COURT:  That's like 20 documents.  Or even if it's
24   a hundred out of your 3300.
25              How do you all want, without extending this schedule
```

C4p9mooc

1    materially, to work through this?
2           I'm not going to look at 3300 documents.  I'll tell
3    you that right now.  They can be categorized.  They can, you
4    know, you all pull some sort of sample.  You could have a
5    special master who gets paid by the hour.
6           You tell me what you want.
7           MR. ANDERS:  Your Honor I think one initial decision
8    is, from plaintiffs, do you agree to abide by Judge Peck's
9    ruling that --
10         THE COURT:  Asked that way, there is no way they can
11    answer that other than yes unless they are total idiots.
12         MR. ANDERS:  Your Honor, my point is I have examples
13    of documents here that are individualized decisions for
14    nonplaintiffs.  And if the position is plaintiffs still think
15    that those are relevant and should be in, well we now have a
16    fundamental disagreement over something I believe your Honor
17    has ruled on.
18         MS. BAINS:  I think we need to understand the thought
19    process behind MSL's coding because in the fifteen minutes I
20    had to review this after getting notice of it, I found at least
21    five documents that MSL itself coded as relevant that were
22    individual personnel decisions for employees who were not
23    plaintiffs.
24         Now if there's some --
25         THE COURT:  To the extent they're giving you more than

C4p9mooc

 1    you deserve, I doubt that you really want to complain about
 2    that.
 3             MR. ANDERS:  Your Honor, some of those e-mails, I
 4    recall some of those, it may have been an individualized
 5    decision.  But within the body of the e-mail there was a
 6    comment about you need approval from these people to do this.
 7    So we took a more liberal or broader approach and included
 8    that.
 9             Yes, it was an individualized decision topic.  But
10    there was comments in there about what the process is.
11             THE COURT:  Well the question is where do you want to
12    go from here, sticking to the timeline you have as much as
13    possible.
14             MS. BAINS:  Could we have a moment to confer to come
15    up with a plan from plaintiffs' side?
16             MR. WITTELS:  Can we step out for four minutes or
17    three minutes?
18             THE COURT:  How about a minute.
19             (Recess)
20             MR. ANDERS:  Your Honor, if I may.  We were
21    discussing.  There are 3300 documents where there is
22    disagreement.  We still haven't, I think, reached a resolution
23    on those e-mails regarding nonplaintiffs -- personnel decisions
24    for nonplaintiffs.  Our suggestion would be that plaintiffs go
25    through the 3300, pull out the ones that truly are personnel

C4p9mooc
```
 1   decisions for nonplaintiffs.
 2             THE COURT:  Let me find out what plaintiffs' view is
 3   based on the discussion we just had.
 4             MS. BAINS:  Well in our view the documents we marked
 5   as relevant that were individual decisions were related to a
 6   centralized decision-maker which is central to plaintiffs'
 7   case.
 8             THE COURT:  That means every decision is "central"
 9   because it was made by somebody somewhere about everybody in
10   the company.
11             MS. BAINS:  Well on the face of the document it is,
12   where it says New York is making this approval.  It has to go
13   to Paris.  I mean --
14             THE COURT:  How many of the 3300 are that and how many
15   are just so and so is getting promoted or so and so sent in a
16   resume asking for a job in HR?
17             MS. BAINS:  I can't give you a number.
18             THE COURT:  Okay.  So here's the question -- I'm not
19   reviewing 3300 documents.  I'll make that very clear.
20             Tell me how you want to resolve this.  You and they
21   are taking very different interpretations of this Court's
22   rules.
23             Do you want to give me, each of you, a sample of a
24   hundred documents?  And whoever wins or loses as we go through
25   them on Friday, or whenever I have time to deal with all of
```

C4p9mooc

```
 1    you, you know, that rules for all 3300.
 2              Do you want someone to review all 3300 sitting down
 3    with you?  That will be a special master.  That's fine too.
 4              MR. WITTELS:  I think, your Honor, taking over for
 5    Ms. Bains.
 6              We just got these documents.  We haven't had time,
 7    very compressed amount of time to look at --
 8              THE COURT:  This is your schedule, guys.  This is the
 9    stipulation you asked me to resolve -- to approve, by the way,
10    at a time when you still didn't want me to decide anything but,
11    hey, that's another story.
12              Here's the schedule.  It's a stipulation both of you
13    asked for.  I approved it.  You're now woefully behind schedule
14    already at the first wave.  We need to resolve that.
15              I'm asking how you want to resolve that.  You gave
16    them the documents Monday.  So what do you mean you just got
17    something?
18              MR. WITTELS:  Your Honor, the compressed schedule is
19    based on your Honor having put us on a very short timetable.
20    We wouldn't have agreed to that type of timetable.
21              THE COURT:  But you did.
22              MR. WITTELS:  We had no choice.  We were forced into a
23    very short timetable to review as many --
24              THE COURT:  Mr. Wittels, stop.
25              MR. WITTELS:  I'm just saying, your Honor, to review
```

C4p9mooc

1    many thousands of documents.  We didn't expect to have so many
2    different coding issues.
3              THE COURT:  Well neither did anyone else.
4         Let me repeat myself.  Give me a solution.
5              MR. WITTELS:  The proposal we -- we need A time to
6    consider the suggestion about whether there should be a special
7    master.
8              THE COURT:  No.  You can decide that now.
9              MR. WITTELS:  I need to confer with the rest of the
10   team, your Honor, as to what --
11             THE COURT:  Then you should bring them.
12        Come on.  This is a stall tactic, Mr. Wittels.
13        That's fine.  I can overrule all your objections sight
14   unseen.
15             MR. WITTELS:  Is that what your Honor wants to do
16   without seeing any of our arguments, just overrule us?
17             THE COURT:  I'd like you to be prepared and not
18   stalling because I didn't give you the stay you asked for.
19   That's what it appears to me, counsel.
20             MR. WITTELS:  No, your Honor.
21             THE COURT:  Come on.  You're lead counsel.  Who do you
22   have to confer with and why?
23             MR. WITTELS:  I want to speak to Janette Wipper and
24   the rest of our team who --
25             THE COURT:  Then why isn't she here?

C4p9mooc

```
 1              MR. WITTELS:  Your Honor we have three attorneys from
 2    my firm here.
 3              THE COURT:  Good.  Then the three of you make the
 4    decision.
 5              Let me hear from defense counsel.
 6              Whoever gives me a view --
 7              MR. WITTELS:  Our view would be A we have a sitdown,
 8    sitdown meet and confer with --
 9              THE COURT:  Why didn't you do that already?
10              MR. WITTELS:  We have it scheduled for Friday.
11              They have now -- yesterday proposed this broad
12    categories documents for the first time.
13              They're coming up with solutions.  We're coming up
14    with solutions.
15              They haven't reviewed all of our proposals as to
16    our -- our issues on the coding.  We've identified for your
17    Honor, just briefly here today, from our first pass many, many
18    inconsistencies in the documents.  We need time to work it out.
19              THE COURT:  You've identified one inconsistency.
20              MR. WITTELS:  Well, to see documents -- there are
21    multiple documents that are marked relevant and irrelevant,
22    which shows that the defendants' methodology is flawed.
23              THE COURT:  Did you give them that counterlist, or is
24    that something you just held in abeyance to use at a motion?
25              MR. ANDERS:  Your Honor, I think when you're going
```

C4p9mooc

1  through the volume of documents that we went through, there are
2  going to be discrepancies in the coding on similar documents.
3  That's the whole reason or one of the reasons why we have this
4  second passthrough where plaintiffs can go review it.
5         I think that's, your Honor, a separate issue than what
6  I'm dealing with, which is getting -- I never anticipated
7  disagreement on 3300 documents.  And when I'm seeing somebody
8  applying for an HR position that's being marked relevant and
9  out of --
10         THE COURT:  Hand up a few of the samples you have.
11         MR. ANDERS:  Yes, your Honor.
12         MR. WITTELS:  Can we see them, please.
13         MR. ANDERS:  Sure.
14         THE COURT:  I'm very tempted to treat this under Rule
15  37 as cost shifting.  I'll look at a number of documents.
16  Whoever wins or loses pays.
17         MR. WITTELS:  Your Honor, we have asked that your
18  Honor defer any ruling on this.  We haven't had time to confer
19  with defendants yet.  Your Honor is putting the cart before the
20  horse, not allowing us to discuss with the defendants what
21  these issues are, work them out, and now you're stating that
22  we, on the basis of no preparation, no dispute before your
23  Honor, are going to rule from the bench.
24         THE COURT:  There is a dispute.
25         MR. WITTELS:  And perhaps --

28

C4p9mooc

```
 1              THE COURT:  Counsel, this may not be fair, but along
 2  with the low pay of being a federal judge I get to interrupt
 3  you.  You don't interrupt me.  Period.
 4              As to no preparation and all of that, you or one of
 5  your colleagues coded these documents as relevant.  I'm going
 6  to look at that and give you some guidance.  We're not doing
 7  briefing on this issue.  Whoever reviewed the document from
 8  your team is presumably sitting here.
 9              MR. WITTELS:  Your Honor, may you tell us which you're
10  looking at.
11              THE COURT:  I'm looking at document NR 6406, 6407.  An
12  assistant account executive asking for tuition reimbursement.
13  What's the relevance?
14              I take it you had marked this as nonresponsive and
15  they marked it as responsive, Mr. Anders?
16              MR. ANDERS:  Yes, your Honor.  The Bates number all
17  the ones we marked as nonresponsive start with an NR.
18              THE COURT:  Okay.  Got it.
19              Okay what's the relevance of this document?
20              If I could read the document for the first time this
21  fast, you guys should be able to tell me why you marked it
22  relevant.
23              MS. BAINS:  This is compensation to a member of a
24  class.  One of the issues is pay.
25              THE COURT:  Counsel, how many times are we going
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C4p9mooc

```
 1   through -- do I have to make the same ruling more than once?
 2   Is it a named plaintiff?  Is it a policy document?
 3           It's a document saying I want some tuition benefit
 4   reimbursement.  Maybe if there were a response to it attached
 5   somewhere that said in accordance with our policy you're
 6   entitled to it or you're not.  But that's not what this is.
 7           How on earth is this relevant under the rulings that
 8   I've already given you, unless Judge Carter reverses them,
 9   assuming it's even one you've taken up with objections.  I
10   can't keep track.
11           MS. BAINS:  The way it stands, the way the ruling
12   stands, we don't agree with that because we can't --
13           THE COURT:  So every time -- you stop.  Come on
14   counsel.  This is really contempt.  Every time you disagree
15   you're going to make me and the defendants make the same ruling
16   multiple times?  On every single document?
17           You've got to be kidding me.  You are to rereview the
18   3300.  For every document that violates my ruling that I have
19   to read that you don't work out before Monday there will be
20   contempt -- sorry, there will be sanctions under Rule 37 and
21   the court's inherent power starting at a hundred dollars a
22   document.
23           This is outrageous counsel.
24           MR. WITTELS:  Your Honor, I think that your Honor is
25   now really expressing here a bias, not the appearance --
```

C4p9mooc
```
 1              THE COURT:  Yeah, it's a bias that you guys want to
 2    run this Court.
 3              That's not a bias counsel.
 4              Sit down.
 5              MR. WITTELS:  Your Honor, you're screaming.
 6              THE COURT:  Sit down, counsel.
 7              MR. WITTELS:  You're screaming at me, your Honor.
 8              THE COURT:  I am yelling at you because you are
 9    showing contempt for the Court.
10              You know the law.  The bias is bias formed outside of
11    court.
12              If you are making outrageous ridiculous arguments that
13    even though I've ruled that this document is irrelevant, you
14    have the right to code it as relevant and reargue it.  Yes, I'm
15    not a happy camper.
16              Sit down.
17              MS. BAINS:  Your Honor, may I ask that MSL be required
18    to reREVIEW.
19              THE COURT:  No.  You are required to redo this.  The
20    only thing you're not -- sorry.  The only other thing you are
21    to do, since -- wherever you have found inconsistent coding,
22    you are to give them the document correspondence list.  So that
23    document, you know, MSL221B was marked relevant and document
24    NR100 of the same thing or very similar was marked irrelevant.
25              MS. BAINS:  So wasn't that something that they should
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

C4p9mooc
```
 1   have noticed when they were coding it?
 2              THE COURT:  They should have.
 3              MS. BAINS:  I'm not sure why it should be plaintiffs'
 4   burden.
 5              THE COURT:  Have you already done it?
 6              MS. BAINS:  Not for all of them.
 7              THE COURT:  Have you done it for some of them?
 8              MS. BAINS:  We did the ones we noticed, but we think
 9   there are many more.
10              THE COURT:  Excuse me.  Counsel what don't you
11   understand?
12              You're interrupting me.
13              For whichever ones you have done it, I'm not saying
14   you have to do anymore, and they will doublecheck.  But where
15   you've done it, the game plan of the Court -- maybe not the
16   plaintiffs -- is to try to make this process work.
17              It requires, as I've said before, all discovery,
18   regardless of whether there were predictive coding, or
19   keywords, or good old-fashioned paper requires lawyers to
20   cooperate.  You've got a list.  Give it to them.  Today.
21   That's the Court's ruling.
22              MS. BAINS:  We're okay with giving the list.  However,
23   if there are more --
24              THE COURT:  I'm glad you're okay with giving the list
25   when I've ordered it.
```

C4p9mooc

```
 1              Are you -- what are you guys doing here?
 2              And then you're going to say yes, I'm biased.  I'm not
 3    biased.  I think you guys don't know how to practice law in the
 4    Southern District of New York.  That's what I think.  Based on
 5    today's appearance and prior appearances by you and some of
 6    your colleagues.
 7              I have ruled.  Unless and until Judge Carter overrules
 8    me, that is the ruling you live with.
 9              I'm going to do one more of these while waiting for
10    the lawyers on the 3:00.
11              NR47383.  Other than it shows that somebody was on
12    maternity leave, why on earth is that relevant?  Where is the
13    policy here?  It's the second document they handed me.  I don't
14    know if your stack is in a different order.
15              MR. ANDERS:  Your Honor, I gave you the full stack
16    that I brought.  I had made copies for plaintiff just so they
17    could have them.
18              MS. BAINS:  We don't have that document.
19              THE COURT:  Come on.  It's a two-sentence letter.
20              Fine.  You're not going to talk.  I'll tell you the
21    answer.
22              MR. WITTELS:  We will speak, your Honor.
23              Apparently the defendants have coded a number of
24    documents as relevant that are similar to this.  And that's why
25    we are now, have said we believe it's relevant.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C4p9mooc

```
 1              THE COURT:  What document?  Show me the document.
 2              MR. WITTELS:  Your Honor, again, we are here without
 3   having had an opportunity to meet and confer and go over these
 4   with defendants.  We didn't bring down the documents.  We
 5   weren't prepared to argue the discrepancies in their coding.
 6              THE COURT:  If the only issue is that it's a
 7   discrepancy, that's what you'll work out when you give them
 8   that list.
 9              But if the discrepancy is as Mr. Anders described
10   before, which is other people with memos referring to maternity
11   leave talked about the policy or process involved and that's
12   why it was coded relevant, that is relevant.  The fact that an
13   individual who is out on maternity leave can't teach a media
14   relations class and refers them to somebody else in the
15   organization does not strike me as the least bit relevant to
16   this case, even if the class was certified.
17              All I'm telling you all --
18              MR. WITTELS:  Well it also enables us to identify who
19   went on maternity leave because defendants refuse to provide us
20   a list of who went on maternity leave which is relevant and
21   germane to our class.
22              THE COURT:  Yes.  It is relevant to your class.  And
23   what the class is certified we'll deal with it.
24              MR. WITTELS:  Again we're being hamstrung in our
25   ability to identify who might be in the class.
```

34

C4p9mooc

```
 1              THE COURT:  And you have the right to take objections
 2    to Judge Carter, which you're not shy about, so take your
 3    objections.  Stop arguing with me.
 4              MR. WITTELS:  Your Honor, may we have until Wednesday,
 5    a week from today, to do what your Honor ordered?
 6              THE COURT:  How are we going to get this schedule to
 7    work?  That's my question.
 8              Let me give you the documents back.
 9              You tell me.  You've got a schedule where there's
10    supposed to be a first iteration starting April 28.
11              How are we going to do that if you're not ready to
12    even sit down with the other side on this until a date after
13    that date?
14              And I'm not really interested.  You know, this
15    schedule was much longer than I contemplated.  But you all
16    agreed to it and submitted it to me by stipulation.  It
17    appeared you all thought it would work.
18              I'm not interested in September 7 of 2012 becoming
19    September 7 of 2013.
20              MR. WITTELS:  We need or I would propose, I don't know
21    the defendants' position, we haven't had an opportunity to
22    confer with them.
23              THE COURT:  Well with all due respect counsel, why
24    not?
25              MR. WITTELS:  Well we have a meeting scheduled for
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C4p9mooc
```
 1   Friday which is why not, your Honor.  We were to do that on
 2   Friday.  We didn't come down here today with any particular
 3   agenda.
 4              THE COURT:  Get to the point.
 5              MR. WITTELS:  We'd ask for two weeks.  To push back
 6   this schedule.
 7              THE COURT:  Ain't happening.
 8              MR. WITTELS:  It won't materially affect --
 9              THE COURT:  It's not happening.
10              MR. WITTELS:  Two weeks, your Honor, doesn't seem --
11              THE COURT:  Two weeks on this one, which means two
12   weeks on the next one, and the next one, and the next one.
13              MR. WITTELS:  It only -- your Honor, a two-week
14   adjournment doesn't really cause any material change in the
15   ultimate outcome here.  Something that's pushed two weeks
16   from --
17              THE COURT:  Are you saying you're going to push
18   everything, or you're going to find -- getting those two weeks
19   back somewhere else in the process?
20              MR. WITTELS:  The proposal would be to push
21   everything.
22              THE COURT:  Yes, of course.  Because delay somehow --
23   I could swear you're sitting at the plaintiffs' table but you
24   don't seem to want too move this case anymore.
25              This is fine.  Democracy has its limits.  You all
```

C4p9mooc

1   figure it out.
2           Bring however many members of your team you need.
3           No "I'm going to confer with somebody else."
4           I'll see you Monday, May 7 at 9:30.
5           You all figure out how you're going to fix this.
6           But that's as far as I'm willing to give you.  And I'm
7   only willing to give you that because I'm on trial all of next
8   week.
9           MR. ANDERS:  Your Honor to confirm plaintiffs are
10  still going to review those 3300, remove whatever --
11          THE COURT:  Let's set a trigger date.  How soon can
12  you redo the 3300 on the plaintiffs' side?
13          MR. WITTELS:  Next Thursday, your Honor.
14          THE COURT:  No.  Come on.  Okay.  So much for
15  democracy.
16          MR. WITTELS:  Wednesday, your Honor?
17          THE COURT:  No.  Monday of next week you're going to
18  give the new list.  Have fun this weekend guys.  You're going
19  to give the new list Monday at 9:30.  You're going to give it
20  to Mr. Anders.  He is going to have until Thursday of next week
21  at 9:30 to review.  And you all are going to get together not
22  only this Friday but a week from Friday and workout whatever
23  you can workout.  And I will see you May 7 at 9:30.
24          And in addition the list that you have talked about of
25  duplicates are going to be given to them by five -- make it

                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

C4p9mooc

1   6:00 p.m. today.
2           MR. WITTELS:  Your Honor the plaintiffs are being
3   obliged to provide a list of the inconsistencies of the ones
4   we've just had an opportunity to look at.
5           THE COURT:  Yes.
6           MR. WITTELS:  Are you going to instruct the defendants
7   under the same fairness issue --
8           THE COURT:  If anyone finds inconsistencies during the
9   review you will share that and any solution with the other
10  side.
11          You have the darn list.  You want to say even though
12  I've got a partial list, I don't want to give it to the other
13  side.  Now do you want to explain to me the reasoning behind
14  that other than obstructionism?
15          MR. WITTELS:  No, your Honor.
16          We will turn over the list.  There is no problem with
17  that.  We only have a partial list of the things that we
18  identified.
19          We're asking that defendants, since they put us to the
20  expense and burden of looking at documents that are coded
21  relevant and irrelevant, that they be ordered to relook at
22  their documents as we've been ordered to relook at ours and
23  produce a list to us of all the documents and explain why those
24  documents --
25          THE COURT:  If they discover, in going through this,

C4p9mooc

1   that there are any duplications and that they need to
2   re-categorize either a relevant document as not relevant or
3   vice versa, they will supply you that information as soon as
4   they have it, within --
5         MR. WITTELS:  Can it be under the timetable we've been
6   put under, under Monday at 9:00 a.m.?
7         MR. ANDERS:  Your Honor plaintiff is asking us to
8   rereview the fifteen thousand documents that were initially
9   reviewed.
10        THE COURT:  I assume this can be done on a computer
11   review, no?  I mean isn't this a dupe -- de-duping issue or
12   partial de-duping?
13        MR. ANDERS:  Well again, your Honor, I'll talk to our
14   vendor about it.  I was told that the set was de-duped the way
15   their system can de-dupe documents.  However there still will
16   be certain duplicates based on, again -- different e-mails have
17   the same attachment.  That attachment is part of that e-mail.
18   So that will appear multiple times.  That won't get de-duped
19   out.
20        THE COURT:  All right.  But does that mean that the
21   e-mail in that example was nonresponsive but the attachment
22   made it responsive or what?
23        MR. ANDERS:  Well, your Honor, an example would be
24   when we did this -- the C set review did not include families.
25   It was simply the documents that were hit as a result of our

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C4p9mooc

1   keyword searches, or plaintiffs' keyword searches, or random
2   sampling.  So we will have attachments without the e-mails as
3   part of the C set generation.
4       When we do the final review, we will review the entire
5   family for the final production.
6       So, yes, your Honor, there could be -- we could have
7   just looked at an attachment because that's how it was
8   presented as part of a keyword search.
9       THE COURT:  Okay.  Whatever.
10      If you find anything, you'll tell them.  I'm not
11  requiring you to rereview the total fifteen thousand.
12      MR. BRECHER:  Judge, if I may, I know you have another
13  conference.  Just one other quick issue.  Relates to the
14  privilege log.
15      We have agreed that the parties do not need to log on
16  a privilege log any of the privilege responsive documents that
17  were -- that existed after the commencement of the lawsuit.
18      They've taken the position, however, that we need to
19  log documents after the filing of the EEOC charge.  And our
20  position is that once the commencement of the case, and that we
21  shouldn't have to log, for the same reasons you don't log --
22      THE COURT:  How many documents are we talking about
23  that fit in that category?
24      MR. BRECHER:  Out of the thousands of documents
25  that -- so far I think it was about two hundred -- is it 209?

C4p9mooc

```
 1               MR. ANDERS:  210.
 2               MR. BRECHER:  There were 210.  The second issue is
 3    they want us to log nonrelevant documents.
 4               So if a document is a -- let's say an e-mail between
 5    general counsel and the president regarding an issue unrelated
 6    to this case, they want us to log nonresponsive e-mails.  And
 7    our position is the rules don't require that.  And we don't see
 8    any basis for making us take the time and expense and burden of
 9    logging nonresponsive privilege documents but they've asked us
10    to do that.
11               THE COURT:  As to the relevant ones -- well, let me
12    hear from plaintiffs.
13               MS. NURHUSSEIN:  Thank you, your Honor.
14               I just want to address the issue as far as the timing
15    of the documents that are being logged first.
16               The only thing -- there is no authority for MSL's
17    position that they don't have to log documents that precede the
18    filing of the complaint.  The only thing defense counsel appear
19    to rely on, at least in our communications --
20               THE COURT:  How about a certain level of common sense
21    and the Faccio or Redgrave article on wasting time.
22               But if we're talking two hundred documents, do the log
23    at this point.  Let's see what happens.  Do the log for that
24    two hundred or 209.  A fairly simple one that the computer can
25    spit out.  To, from, you know, subject, re, whatever.
```

C4p9mooc

```
 1              MR. BRECHER:  I may have misspoke.  The nonrelevant
 2    are 210.
 3              THE COURT:  How many are the relevant ones?
 4              MR. BRECHER:  I think we've only had to log maybe 29
 5    relevant documents.
 6              THE COURT:  So log the 29.
 7              As to the nonrelevant.
 8              MS. NURHUSSEIN:  Yes, your Honor.  The reasoning
 9    behind that is, as you know, there are obviously disputes in
10    terms of the relevancy determinations and because --
11              THE COURT:  Let's assume -- first of all, you're going
12    to work the relevance out for the nonprivilege documents.
13    Let's assume they're wrong and one of these 209 is relevant.
14    You're not going to get it anyway unless you break the
15    privilege.  As long as -- and are these mostly with outside
16    counsel or with inside counsel?
17              MR. BRECHER:  I would say a mix.
18              THE COURT:  Any with outside counsel you don't have to
19    log.
20              As to in-house counsel, at this stage of the
21    litigation, what do you gain by this?
22              Plaintiffs?
23              I mean this is a cost/benefit analysis.
24              MR. BRECHER:  Judge, we think it's consistent with the
25    local Rule 26.2, with Rule 1 and with Rule 26(b)(5).
```

C4p9mooc

```
 1              MS. NURHUSSEIN:  Your Honor, our concern is
 2     specifically when we're dealing with an ESI protocol --
 3              THE COURT:  What's the difference?  If this wasn't a
 4     an ESI protocol, you would never get a privilege log for
 5     nonrelevant documents.
 6              MS. NURHUSSEIN:  Our concern, your Honor --
 7              THE COURT:  If you can't figure out with the fifteen
 8     thousand nonprivilege documents what is going on, I guess my
 9     question is this.  Paralegal.  Two hundred documents.  You want
10     to pay for it on the plaintiffs' side?
11              My inclination is there is no reason to log it.  You
12     want it logged, this is one of the cases where I'll consider a
13     checkbook discovery.
14              You want to pay for it?
15              MS. NURHUSSEIN:  Your Honor, we don't think --
16              THE COURT:  That's a yes or no.
17              MS. NURHUSSEIN:  No, your Honor.  We don't think we
18     should have to pay for that.
19              THE COURT:  Fine.  They don't have to be logged.
20              MR. BRECHER:  Thank you, your Honor.
21              MR. EVANS:  Paul Evans for Publicis.  I have a
22     conflict on May 7.  But I don't think there's any need for me
23     to be here at that hearing, if I can be excused.
24              THE COURT:  You managed to almost get off today
25     without saying anything.  Let me just ask you one question.
```

C4p9mooc

```
 1              MR. EVANS:  Yes, your Honor.
 2              THE COURT:  And that is:  Is the discovery ongoing and
 3    on track for the new cutoff of June 18 as far as you're
 4    concerned?
 5              MR. EVANS:  It is, your Honor.  We met and conferred
 6    with the plaintiffs yesterday.  We have a deposition scheduled
 7    for June 6.
 8              Publicis has produced supplemental discovery of April
 9    2, and we're working out remaining issues with the plaintiffs
10    at this time.
11              THE COURT:  Plaintiffs agree?
12              MS. NURHUSSEIN:  Yes, your Honor.  That's accurate.
13              THE COURT:  Okay.
14              The June 18 deadline is not likely to be extended.
15    We're going to get the Publicis issue briefed so that we can
16    figure out if they're in or out.
17              MS. NURHUSSEIN:  Your Honor, the only thing I would
18    add is, as Mr. Evans pointed out, there are some -- we are
19    still waiting for some documents.  So there are some
20    outstanding disputes that we are in the process of working them
21    out.  We, obviously, will try our best to meet the deadline.
22              THE COURT:  No.  You will meet the deadline.  The
23    deadline is nonmovable.  If you have problems with them, either
24    Mr. Evans will send a colleague, if you want to resolve this in
25    the hour-and-a-half I'm now setting aside for your conference
```

C4p9mooc

1  on Monday, May 7, or you can decide what date makes sense and
2  we'll have a conference dealing with the Publicis issue.
3           The June 18 deadline is not going to be extended
4  again.  It's been extended once.  Let's decide if they're in
5  the case or not in the case.  Got it.
6           MS. NURHUSSEIN:  Yes.  I understand, your Honor.
7           THE COURT:  Very good.
8           Anything else?
9           MS. BAINS:  Your Honor, yes.
10          On the ESI protocol there's a couple issues.
11          There are several documents that were marked either
12  nonresponsive or responsive that have the statement the --
13  something like this message --
14          THE COURT:  Your senior lawyer told me a minute ago
15  that you needed more time to work things out with the other
16  side.  My 3:00 conference is ready.  Is this something that
17  needs to be decided today?
18          MR. WITTELS:  That's fine, your Honor.  The defendants
19  have stood up and made multiple requests of your Honor about
20  things that we were not here to discuss and you allowed them to
21  do it.  We didn't want --
22          THE COURT:  Counsel.
23          MR. WITTELS:  I'm not interrupting, your Honor.  Yes.
24          THE COURT:  You're not?
25          MR. WITTELS:  No, I'm not.  I wasn't finished --

45

C4p9mooc

1          THE COURT:  Remember I judge credibility.  You're not
2     doing well with that last statement.  Interrupting me with the
3     words I'm not interrupting you.
4          However, I want to be fair to you.  So you can sit
5     around.  When I'm done with the 3:00 we'll take more issues.
6     Sorry for the defendants.  Sit in the back.  We're going to
7     deal with the -- Alli case.
8          MR. WITTELS:  Well your Honor we can bring them up
9     with them when we meet with them.
10          THE COURT:  Counsel which is it you want?  You're
11     complaining I'm being unfair to you.  So now I say I'll hear
12     you more and you don't want to do it.
13          MR. WITTELS:  Your Honor, you've given us until 6:00
14     to give them things.
15          THE COURT:  You can have until 8:00 to give them the
16     list.
17          MR. WITTELS:  Your Honor why don't we --
18          THE COURT:  Whatever you want.  A minute ago you said
19     I was being unfair to you by not letting you do more.  I'm
20     letting you do more.  I can't win with you.  Tell me what you
21     want, Mr. Wittels.  Either choice.  I can deal with you after
22     the 3:00 conference or we can hold it until May 7.
23          MR. WITTELS:  We'll try to deal with the defendants if
24     possible.  If we can't work it out, we'll bring it to your
25     Honor on May 7.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

46

C4p9mooc

1            THE COURT:  Excellent.
2            Both sides are required to purchase the transcript.
3  The usual rules apply.  That is the Court's ruling.
4            If you are taking objections to Judge Carter you know
5  the drill.  The 14 days begins running immediately regardless
6  of how soon you get the transcript.
7            Quickly make your arrangements with the reporter.
8            Folks on Alli move on up.
9            (Adjourned)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25