UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| IN RE: BIOMET M2a MAGNUM HIP IMPLANT PRODUCT LIABILITY LITIGATION<br><br>(MDL 2391) | CAUSE NO. 3:12-MD-2391-RLM-CAN<br><br>Judge Robert L. Miller, Jr. |
|---|---|
| | This Document Relates to:<br><br>Civil Action No. 3:12-cv-602-RLM<br>Civil Action No. 3:12-cv-625-RLM<br>Civil Action No. 3:12-cv-636-RLM<br>Civil Action No. 3:12-cv-637-RLM<br>Civil Action No. 3:12-cv-638-RLM<br>Civil Action No. 3:12-cv-639-RLM<br>Civil Action No. 3:12-cv-643-RLM<br>Civil Action No. 3:12-cv-670-RLM<br>Civil Action No. 3:12-cv-680-RLM<br>Civil Action No. 3:12-cv-684-RLM<br>Civil Action No. 3:12-cv-687-RLM<br>Civil Action No. 3:12-cv-694-RLM<br>Civil Action No. 3:12-cv-695-RLM<br>Civil Action No. 3:12-cv-698-RLM<br>Civil Action No. 3:12-cv-702-RLM<br>Civil Action No. 3:12-cv-715-RLM<br>Civil Action No. 3:12-cv-724-RLM<br>Civil Action No. 3:12-cv-725-RLM<br>Civil Action No. 3:12-cv-732-RLM<br>Civil Action No. 3:12-cv-790-RLM<br>Civil Action No. 3:12-cv-795-RLM<br>Civil Action No. 3:12-cv-810-RLM<br>Civil Action No. 3:13-cv-001-RLM<br>Civil Action No. 3:13-cv-073-RLM<br>Civil Action No. 3:13-cv-092-RLM<br>Civil Action No. 3:13-cv-119-RLM<br>Civil Action No. 3:13-cv-148-RLM<br>Civil Action No. 3:13-cv-160-RLM<br>Civil Action No. 3:13-cv-167-RLM<br>Civil Action No. 3:13-cv-175-RLM<br>Civil Action No. 3:13-cv-178-RLM<br>Civil Action No. 3:13-cv-215-RLM |

|  | ) Civil Action No. 3:13-cv-231-RLM<br>) Civil Action No. 3:13-cv-233-RLM<br>) Civil Action No. 3:13-cv-365-RLM<br>) Civil Action No. 3:13-cv-457-RLM<br>) Civil Action No. 3:13-cv-466-RLM<br>) Civil Action No. 3:13-cv-473-RLM<br>) Civil Action No. 3:12-cv-800-RLM<br>) Civil Action No. 3:12-cv-809-RLM |
|---|---|

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO COMPLY WITH ORDERS REQUIRING TIMELY SERVICE OF MATERIALLY COMPLETE PLAINTIFF FACT SHEETS**

Defendants Biomet, Inc., Biomet Orthopedics, LLC, Biomet Manufacturing Corp., and Biomet U.S. Reconstruction, LLC (collectively, "Biomet") respectfully submit the following memorandum in support of their motion to dismiss.

**INTRODUCTION**

The claims of the Plaintiffs in the above-captioned cases should be dismissed because they have either (a) not served a Plaintiff Fact Sheet ("PFS") as required by this Court's February 15, 2013 Case Management Order ("CMO") (Doc. No. 242), or (b) served a PFS with material deficiencies that have not been cured.

**FACTUAL BACKGROUND**

The Court's February 15, 2013 CMO states that "[e]ach plaintiff whose case is, or may hereafter be, included in MDL No. 2391 shall complete a Plaintiff Fact Sheet ("PFS"), the form of which the court will soon determine and which shall become Exhibit D to this case management order . . . ." (CMO, Section D(1)). The Court approved a form PFS for this MDL by order dated March 25, 2013 (the "PFS Order") (Doc. No. 320). Two days later, the Court entered an order clarifying the deadlines by which Plaintiffs were required to complete and serve a PFS (the "Supplemental PFS Order") (Doc. No. 325). That order provides that "Plaintiffs in actions that were transferred to this MDL before the entry of this Order shall serve a complete and signed PFS .

2

. . within (90) days of the entry of this Order." *Id.* In other words, Plaintiffs whose cases were in the MDL prior to March 27, 2013 were required to serve a PFS within 90 days from that date, or by June 25, 2013. All of the cases that are part of this motion were in the MDL prior to March 27, and their deadline to serve their PFS was therefore June 25.

**A.    Cases Lacking a Fact Sheet**

With the exception of Plaintiffs Fordy Reed and Ava Highnote (discussed below), Plaintiffs in the above-captioned cases did not serve a PFS by that Court-ordered deadline, a situation that is addressed squarely by the CMO. Section D(4) provides:

> When any plaintiff has failed to materially comply with his or her obligations under this order within the timelines established herein, defendants shall, once the PFS is 30 days past due, send notice of the material deficiency to plaintiff's counsel for the individual whose responses are alleged to be defective ("the deficiency letter"). The deficiency letter shall identify the alleged material deficiency and state that the plaintiff has 30 days to cure the alleged material deficiency and that the defendants intend to file a motion to dismiss if the deficiency is not cured.

On July 25, 2013, Biomet sent deficiency letters, as contemplated by Section D(4) of the CMO, to counsel for 142 plaintiffs whose fact sheets were "30 days past due." Each letter (exemplar attached as Exhibit A) states that plaintiff's PFS is overdue and that if a completed PFS is not received within 30 days (by August 25), Biomet will move to dismiss. 101 plaintiffs served a fact sheet by the August 25 deadline, but the 41 plaintiffs that are the subject of motion this did not. Accordingly, pursuant to Section D(6) of the CMO, Biomet moves for dismissal of these plaintiffs' claims.

**B.    Cases with Materially Deficient Fact Sheets**

Plaintiffs Fordy Reed (Case No. 3:12-cv-00809) and Ava Highnote (Case No. 3:12-cv-00800) served fact sheets, but they were materially deficient. Specifically, Plaintiff Reed did not provide any response to the following questions:

3

- If the M²a Device has been removed, to your knowledge has it been tested or inspected in any way? (Section II(8))

- Have you received any other treatment or testing related to your M2a Device? (Section II(17))

- Social Security Number (Section III(6))

- Current marital status (Section III(8))

- If married, has your spouse filed a loss of consortium or other claim in this action? (Section III(10))

- If you have children, list each child's name and date of birth. (Section III(11))

- Are you currently employed?  If yes, please identify your current employer with name, address and telephone number and your position there.  (Section III(12))

- For the period of time from three years before you had your first hip surgery until the present, please identify all of your employers, with name, address, and telephone number, your employment dates, your position there, and your reason for leaving.  (Section III(13))

- For the period from three years before your first hip surgery until the present, please indicate if you have actively participated in sports.  (Section III(14))

- For the period from three years before your first hip surgery until the present, please indicate if you have regularly exercised.  (Section III(15))

- Have you ever served in any branch of the military?  (Section III(16)

- Have you ever been rejected from military service for any reason relating to your medical or physical condition?  (Section III(17))

- For the period from three years before your first hip surgery to the present, have you been on or applied for workers' compensation, social security, and/or state or federal disability benefits?  (Section III(19))

- Have you ever been involved in an accident or event, in which or as a result of which you suffered any personal injuries to your legs, hips or pelvic area?  (Section III(20))

- Have you ever been out of work for more than 30 consecutive days for any reasons related to your health in the last 10 years? (Section III(21))

- Have you ever filed a lawsuit or made a claim against a healthcare provider, pharmaceutical company, or medical device manufacturer?  (Section III(22))

4

- Have you ever been convicted or, or pled guilty to, a felony and/or crime of fraud or dishonesty within the past ten years? (Section III (23))

- Have you or your spouse declared bankruptcy since the date of your original hip implantation surgery? (Section III(24))

- Have you read or seen any written, televised, or internet-based advertising or labeling material related to the M²a Device or any other metal-on-metal hip prostheses? (Section III(25))

- Since you received your M²a Device, have you posted a comments, message or blog entry on a public internet site . . . in which you have discussed or described your M²a Device experience, injury, disability, pain or physical complaints related to the M²a Device? (Section III(26)) (**Response: Objection, this question is unlikely to lead to the discovery of relevant information**.)

- Identify each facility at which radiographs (x-rays, ultrasounds, MRIs, CT scans) were taken in the last 10 years of your hips, pelvis, or legs. (Section IV(3))

- Identify each laboratory at which your blood was tested in the last ten years for blood levels of any metals, including cobalt and chromium. (Section IV(4))

- Identify each pharmacy, drugstore, or any other facility or supplier . . . where you ever received any prescription medication for the period five years before you first hip surgery (except for medicine for any orthopedic condition or complaint about your hips, legs or pelvis, in which case information should be provided for the past ten years.) (Section IV(5))

- Current height (Section V(1))

- Current weight and weight at time of implant and revision (if any). (Section V(2))

- Smoking history (Section V(3))

- Alcohol and allergies (Section V(4))

- Plaintiff did not provide any response to the questions relating to the medical conditions listed in Section V(5).

- List all medications (prescription and over the counter) you currently take. (Section VI(1))

- To the best of your recollection, are there any prescription medications other than those identified that you have taken on a regular basis for any duration of more than two months for the period five years before your first hip surgery to the present (except for any

> orthopedic condition or complaint about your hips, legs or pelvis, in which case information should be provided for the past ten years.) (Section VI(2))

- Before the implantation of the M²a Device, did you receive non-surgical treatment for your hip? (Section VII(2))

- Are you making a claim for lost wages or lost earning capacity? (Section VIII(3))

- Medical and out-of-pocket expenses (Section IX(1)) (Response: Unsure, under investigation.)

- Fact Witnesses (Section XI)

Plaintiff Reed also did not verify his PFS, nor did he provide the required Limited Authorizations that would permit Biomet to obtain his medical records.

Plaintiff Highnote did not answer these same questions, with the exception of her social security number, details of a blood screen, her height, her weight (but not her current weight), her smoking history (but with no time frame), food/metal allergies, and whether she has any of the medical conditions listed in Section V(5). And like Reed, Plaintiff Highnote did not provide any Limited Authorizations or verify her PFS. Indeed, both of these facts sheets are captioned "Unverified Plaintiff Fact Sheet."

On July 5 and 6, 2013, respectively, Biomet sent letters to counsel for Plaintiffs Reed and Highnote informing them that their fact sheets were materially deficient, and that if those deficiencies were not cured within 30 days, Biomet would file a motion to dismiss (*see* Exhibits B and C). Some 50 days have since passed, and no further information has been provided. These cases should also be dismissed.

## ARGUMENT

Fed. R. Civ. P. 41(b) provides that if a "plaintiff fails . . . to comply with . . . a court order, a defendant may move to dismiss the action or any claim against it." This includes orders relating to discovery. Fed. R. Civ. P. 37(b)(2)((A)(v). The issue before the Court is simple and straightforward – Plaintiffs were obligated by orders of this Court to serve a materially complete PFS, and they did

not do so. The PFS approved by the Court (after the parties met and conferred and ultimately presented arguments to the Court) is carefully drafted to obtain relevant, material information from each plaintiff relating to their personal background, health and medical history, damages, and, most importantly, their specific $M^2a^{TM}$ device and any testing, surgical and medical care relating to the same. Biomet cannot defend these cases – indeed, this MDL cannot move forward as a whole – unless each and every plaintiff timely serves a completed PFS, as is their Court-ordered obligation.

As "an MDL court, [this court's] discretion is broadened by [its] responsibility to promote the just and efficient conduct of actions that are coordinated or consolidated for pretrial purposes." *In re Zicam Cold Remedy Marketing, Sales Practices, and Prods. Liability Litigation*, No. 09-md-2096, 2011 WL 3438862, at * 1 (D. Ariz. Aug. 5, 2011) (citation and internal quotes omitted). A similar sentiment was noted by the transferee court in *In re FEMA Trailer Formaldehyde Prods. Liability Litigation*, No. MDL 07-1873, 2011 WL 6210732, at * 3 (E.D. La. Dec. 14, 2011) in dismissing several cases due to plaintiff's failure to provide materially complete fact sheets: "[i]n a matter as large and complex as this one, clearly defined case management procedures such as [the PFS procedure] are a matter of necessity." That same necessity is present in this MDL, which presently has nearly 600 member cases. *See also, e.g., In re Phenylpropanolamine (PPA) Prods. Liability Litigation*, No. MDL 1407, 2006 WL 1041822, at * 1-2 (W.D. Wash. April 4, 2006) (dismissing plaintiff's claims for failure to timely serve fact sheet) ("Plaintiff's delay impeded the resolution of this dispute and the ability of the court to manage its docket, problems compounded by the complex nature of multi-district litigation. * * * Such disregard for this court's directives and the orderly conduct of discovery consumes unnecessary time and resources of both this court and defendants.")

As for Plaintiffs Reed and Highnote, after receiving their fact sheets Biomet does not really know any more about them or their claims than it already knew from their Complaints and Biomet's own sales documentation. Reed and Highnote's PFS are not "materially complete" under any

reasonable definition of that phrase, and certainly not under the CMO itself, which defines "materially complete" as including: (a) answers to all questions in the PFS; (b) the signed Verification found on the last page of the PFS; (c) duly executed Limited Authorizations; and (d) the documents requested in the PFS, to the extent such documents are in the possession of plaintiff or plaintiff's counsel. (CMO, Section D(5)).

## CONCLUSION

In violation of this Court's orders, Plaintiffs have not served materially complete fact sheets – and with the exception of Plaintiffs Reed and Highnote, no fact sheet at all in the above-captioned cases. Accordingly, Biomet respectfully requests that the Court dismiss these cases in their entirety.

Dated: August 26, 2013

/s/ Erin Linder Hanig
John D. LaDue
Erin Linder Hanig
LADUE CURRAN & KUEHN LLC
200 First Bank Building
205 West Jefferson Boulevard
South Bend, IN 46601
Tel: (574) 968-0760
jladue@lck-law.com
ehanig@lck-law.com

John D. Winter
Jenya Moshkovich
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
jwinter@pbwt.com
jmoshkovich@pbwt.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that on August 26, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which provided electronic service upon all counsel of record.

/s/ Erin Linder Hanig
Erin Linder Hanig (29113-71)
