UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| IN RE: BIOMET M2a MAGNUM HIP   ) <br> IMPLANT PRODUCTS LIABILITY     ) <br> LITIGATION (MDL 2391)              ) <br>                                                 ) <br>                                                 ) <br>                                                 ) <br> This Document Relates to All Cases   ) <br>                                                 ) | CAUSE NO. 3:12-MD-2391 |

MEMORANDUM CONCERNING APPOINTMENT OF
SPECIAL MASTER AND SCHEDULING

On November 18, counsel for both sides elaborated on their briefs concerning the timetable for this MDL docket and the need for a special master, as well as additional issues about nonrevision cases and cases that Biomet believes are barred by an applicable statute of limitations. I told the parties I would rule that week, if possible, and found that the issues required a little more time. This is the promised ruling. Because of the logical interplay between the special master and timetable issues, I discuss those together.

A.

The Plaintiffs' Steering Committee says there are many discovery issues that will demand considerable time and attention from a judicial officer or a quasi-judicial officer, and that those same issues will require a lot of time from their own members. So as the PSC sees it, more time than usual will be needed for document production, delaying depositions, and forcing dispositive motion

practice and bellwether trials further along the calendar. As the PSC sees it, a special master for discovery matters would expedite resolution of the anticipated discovery disputes, so a special master for discovery should be appointed lest the life of this docket be extended even further. Biomet sees things differently. Biomet says it produced by August the documents it said it would produce by August, and the attorneys have met-and-conferred their way through many thorny issues already and are continuing to do so. Having begun its document production in 2012 (even before the creation of this MDL docket and before the creation of the PSC), Biomet says it's unreasonable to think depositions must be delayed to the point that selection of bellwether trials can't begin until 2015. Biomet also believes the state of this case is such that the law doesn't allow appointment of a special master.

I agree with Biomet's legal point. To appoint a special master for any pretrial purposes, a court must find that an available district judge or magistrate judge of the district can't address matters effectively and timely. FED. R. CIV. P. 53(a)(1)(C). To help me evaluate the PSC's request under that standard, counsel for both sides outlined present and anticipated obstacles in the discovery process. The PSC anticipates many issues, requiring regular conferences on a weekly or bi-weekly basis. Biomet points to the parties' past and ongoing meet-and-confer efforts. Biomet notes that while I've had to resolve a few issues so far, no motions to compel pend.

Among the reasons busy district judges cheerfully accept assignments from the Judicial Panel on Multidistrict Litigation is the chance to work with some of the nation's best attorneys. The attorneys in this docket validated that thought. The attorneys have worked diligently through a variety of issues that might have required my involvement; when they have been unable to resolve an issue, they have placed the issue, well defined, into my hands and I have decided those issues with reasonable dispatch. More issues are in the pipeline. It appears likely that I'll have to decide whether the PSC can take the deposition of Biomet's CEO. I might need to decide issues about electronically stored Biomet records from before 2009, such as what Biomet must do to retrieve them and how they will be filtered for discoverable matter. I might have to decide whether (and if so, when) Biomet must provide unredacted adverse event reports in its files to attorneys who represent the plaintiff-patients in those complaints. I might have to enter some sort of order addressing what the PSC sees as an alarmingly low perceived relevancy rate of documents Biomet already has produced. Alternatively, some of those rulings might be unnecessary because (apart from the CEO's deposition) the parties' meet-and-confer efforts continue. And, of course, I also might have to rule on many other, more intricate issues that haven't yet emerged.

I see no reason why I won't be able to provide the discovery rulings the parties need and do so with sufficient dispatch that the case can stay on a timetable. I will enter an order authorizing Magistrate Judge Christopher A. Nuechterlein to hear and resolve discovery disputes on those rare occurrences

when I am unavailable. In furtherance of that goal, I will enter a separate order providing an expedited procedure for resolving discovery disputes that the parties find they can't resolve.

Because an available district judge and/or magistrate judge can effectively and timely address pretrial matters in this docket, I deny the PSC's request for appointment of a special master for discovery purposes.

B.

Before turning to the timeline for the handling of cases, I turn to the parties' joint recommendation that we set aside – for a time, not for forever – a general sort of case. The PSC and Biomet agree that most or all of the non-revision cases – cases in which the plaintiff hasn't had the Biomet product removed and replaced – should take a back seat at this stage of the litigation. Biomet thinks the cases should be dismissed without prejudice; the PSC thinks the cases should be remanded to the transferor courts at the end of the MDL proceedings. Neither side demands a resolution of that dispute at this point, but both believe that the non-revision cases present problems of proof that should be deferred. Later events might ease those problems of proof. I agree with the PSC and Biomet that we should focus our attention, at this point, on the comparatively stronger cases.

The parties disagree at the margins as to what cases should be assigned to the "revision" track as opposed to the "non-revision" track. Biomet thinks the distinction should be literal, with all plaintiffs who still have the Biomet hips being

assigned to the "non-revision" track. Under Biomet's proposal, if plaintiffs originally assigned to the "non-revision" track eventually have revision surgery, their cases can be transferred to the "revision" track. The PSC would agree to stay all cases in which the plaintiffs haven't had the hip replaced, except for cases in which a physician recommends a revision procedure but the plaintiff can't have the surgery for a reason unrelated to the Biomet hip, such as a heart condition.

Biomet's plan draws too bright a line. My understanding is that there are ways (such as blood tests that can indicate metalosis or similar conditions) to demonstrate injury from the Biomet hip without surgery to remove the hip and examination of the hip and the tissue that surrounded it. There seems to be no reason to slow those cases, even temporarily.

On the other hand, the PSC's plan draws too faint a line. A physician's recommendation of revision surgery seems at least as likely to be based on industry-wide concerns about the safety of metal-on-metal hips as on reasons unique to a given patient. Such a recommendation seems weak support for moving the case into the track of cases in which experts can evaluate whether a particular hip caused a particular injury to a particular plaintiff.

So I will create two tracks for the cases in this docket. The Revision Track will include all cases in which the plaintiff has undergone revision surgery; the Non-Revision track will include, initially, all cases in which the plaintiff has not undergone revision surgery. I will entertain motions to move particular cases from the Non-Revision Track to the Revision Track, *e.g.*, since the case's assignment to

the Non-Revision Track, the plaintiff has undergone revision surgery; the plaintiff's physician has, for objective medical findings specific to that plaintiff, recommended revision surgery; or some other objective indication of injury exists. Proceedings in the Non-Revision Track will be stayed until further order.

I don't mean to foreclose the possibility that future developments might require these track definitions to be reconsidered, but this definition is appropriate based on what we know now. The accompanying order will set forth the date by which the parties are to submit an agreed list of non-revision cases that will be placed in the Non-Revision Track. The plaintiffs can then begin to file motions to transfer individual cases out of that track.

C.

Biomet also believes many of the cases in this docket — some twenty percent of the non-revision cases as Biomet counts them — are subject to dismissal on statute of limitations grounds. Rather than seeing the parties spend time on discovery on those cases, Biomet proposes arranging a sort of bellwether procedure to get rulings on its statute of limitations arguments. The PSC opposes such a procedure, for what looks like two interrelated reasons. First, the PSC says, a bellwether procedure is unwieldy because each state has its own time limits and tolling rules. Second, the PSC seems to argue, because of those state-specific limits and rules, it would be appropriate to allow transferor courts (which

are more familiar with the laws of the states in which they are located) to resolve the statute of limitations arguments.

I disagree with the PSC on the second point (I realize I might have misunderstood a statement meant to make a different point, so the PSC itself might disagree with the second point). The JPMDL assigned this docket with the expectation that I would resolve all pretrial matters, and dismissal on statute of limitations grounds generally is a pretrial matter. Application of unfamiliar state-specific laws provides no basis for me to decline to do what I agreed to do when I accepted this assignment.

I will, in a separate order, set forth a timeline for motions to dismiss or for summary judgment – solely on statute of limitations grounds – in up to six cases. After I rule on the first six motions, we can discuss where we go from there. Recognizing that the district briefing rules would allow nearly 400 pages of briefs on six motions, I will, in the interest of a prompt ruling, limit opening and response briefs on these motions to fifteen pages and reply briefs to ten pages.

D.

I invited the parties to submit proposed timelines for the handling of the docket through the bellwether trials. The parties submitted wildly disparate proposals. Consistent with its views on the challenges of discovery still ahead, the PSC proposed a timeline that would have the first bellwether trial beginning in March 2016. Consistent with its belief that it has nearly completed document

production, Biomet proposed a timeline that would have the first bellwether trial beginning in December 2014. The PSC indicated that the plaintiffs won't consent to trial in this district of cases filed in other districts, as is their right under Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). Recognizing that assertion of rights under Lexecon, Biomet asks that when bellwether trials are tried in other districts, I preside. To decline such a waiver is the plaintiffs' right, and it seems to me to be quite reasonable for the plaintiffs to prefer that at least a few bellwether trials be held outside the district in which Biomet has its principal place of business. That said, it's more complicated to arrange bellwether trials in a variety of districts. As we get closer (and when we know what districts will be involved), I will seek inter-circuit assignments allowing me to preside at trials in the proper venue when it is feasible and arrange trial dates with transferee judges when it isn't.

  Just as the parties made their proposals consistent with their views of the discovery process, my views on the process delineate my decision on the timeline. As indicated in Part A of this memorandum, I am more optimistic than the PSC that we (the attorneys and I) will be able to resolve discovery disputes with reasonable speed, and those resolutions will guide resolution of future discovery disputes. Given the number of attorneys on the PSC (and I am willing to appoint more attorneys if the docket demands it), I can't see why it should take, for example, ten and a half months to complete the depositions of custodians, as the PSC proposes. I recognize that bellwether trials have become important in mass

tort multidistrict litigation, and I want both sides to be reasonably informed when they nominate bellwether cases. But with 800 or so from which to choose already, I have to think there is a range of good bellwether candidates rather than five or six perfect ones.

That said, I also think Biomet is overly optimistic about when it will complete document production. As I understand it, the PSC thinks, and Biomet concedes (to a point), that relevant documents are to be found in pre-2009 documents that haven't yet been searched. Issues remain (either for the parties' agreement or my decision) as to how those documents are to be searched after they are converted to a searchable format. It also looks to me as though Biomet is measuring the time needed for meet-and-confer on discovery disagreements by the time it takes two law firms working together to reach a decision; it seems logical that a committee the size of the PSC would take longer.

One last thing with respect to bellwether trials. Both sides have suggested four bellwether trials; neither explains why. Both sides cast their proposals in terms of cases chosen by the PSC and cases chosen by Biomet. I assume that when we get to the point of the selecting cases for bellwether trials, we will focus on cases that either are representative of all the cases (not one of the stronger ones for one side) or involve a feature (such as a patient's age or medical history) that will allow evaluation of a significant subset of the docket. To help things remain that way, I will select any replacement cases for bellwether trial purposes. The timeline that follows contemplates as many as five bellwether trials, three

involving the M2a Magnum hip implant and two involving the M2a 38.

Finally, neither side proposed a deadline for amending the pleadings. Federal Rule of Civil Procedure 16(b)(3)(A) requires such a deadline. Although entry of a scheduling order often takes a back seat in mass tort litigation, I think a deadline for amending the pleadings is essential for the rest of the deadlines to be meaningful. Accordingly, the accompanying order establishes a deadline for amendment to the pleadings that amount to: (a) 90 days from the date of this order, or (b) 90 days from the date of the answer, whichever is later.

ENTERED:   December 10, 2013

/s/ Robert L. Miller, Jr.
Robert L. Miller, Jr., Judge
United States District Court