UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| IN RE: BIOMET M2a MAGNUM HIP IMPLANT PRODUCTS LIABILITY LITIGATION (MDL 2391) | ) ) ) ) | Cause No. 3:12-MD-2391 |
| *This Document Relates to:* | ) ) ) ) ) | |
| WOHLLEBER V. BIOMET ET AL. | ) | Cause Nos. 3:14-CV-2002 |
| CLIFFORD V. BIOMET ET AL. | ) | 3:15-CV-540 |
| CHAPMAN V. BIOMET ET AL. | ) | 3:16-CV-871 |
| HUGHES V. BIOMET ET AL. | ) | 3:17-CV-455 |
| LITTLE V. BIOMET ET AL. | ) | 3:17-CV-507 |
| MCGINNIS V. BIOMET ET AL. | ) | 3:17-CV-509 |
| WISE V. BIOMET ET AL. | ) ) | 3:17-CV-603 |

## OPINION AND ORDER

Biomet filed motions for summary judgment in seven cases that were centralized or filed directly into this multidistrict litigation docket, which addresses personal injury claims arising from the Biomet M2a and M2a-38 metal-on-metal hip replacement devices. The parties agree that North Carolina law provides the rule of decision in each of the cases. Biomet seeks summary judgment based on North Carolina's repealed statute of repose, N.C. Gen. Stat. § 1-50(a)(6).

Early on in this multi-district litigation docket, I told the parties that I intended to leave sticky questions of state law to the courts that would try the cases, reasoning that those courts were more familiar than I with the governing

law. My second concern was the delay that would affect all cases in the docket as I tried to get up to speed on the laws and doctrines of each state involved in these proceedings. After fulfilling my own prediction about delay on this motion, I have concluded that these North Carolina cases present issues that are best decided by courts more familiar than I with North Carolina law. These cases will fall into several judicial laps in the federal courts of North Carolina, and I believe I owe those judges, as well as the parties, an explanation as to why I am leaving these issues open.

In 2009, the North Carolina General Assembly amended the applicable statute of repose from a six-year term to a twelve-year term.[1] In six of the seven cases involved in these motions, a Biomet M2a-38 device was implanted into the plaintiff less than six years before that amendment took effect, and suit was filed more than six, but less than twelve years after the device was implanted.[2] Biomet

---

[1] "No action for the recovery of damages for personal injury, death, or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than 12 years after the date of initial purchase for use or consumption." N.C. Gen. Stat. § 1-46.1(1).

[2] A Biomet M2a–38 device was implanted in Jacqueline Chapman's right hip in June 2005. She underwent revision surgery in February 2015 and filed suit in December 2016.
  Thomas Clifford's M2a–38 device was implanted in his right hip in March 2005. The hip was removed during revision surgery in November 2015. He and his wife filed suit in November 2015.
  Van Hughes received his Biomet device in November 2006. His revision surgery took place in September 2016, and he filed this case in June 2007.
  Donald McGinnis received his M2a-38 device when surgeons implanted it in his hip in February 2008. The revision surgery took place in January 2017. Mr. McGinnis and his wife filed suit in January 2017.
  Connie Wise's device was implanted in March 2007. The revision surgery

contends that each of the claims was extinguished six years from the date of implantation. In the seventh case,[3] suit was filed more than twelve years after the date of implantation, making it untimely unless the "disease exception" discussed later applies.

The plaintiffs raise four arguments in opposition to summary judgment: (1) the statute of repose didn't begin to run until the revision surgeries showed what was happening to the plaintffs; (2) equitable tolling in the form of fraudulent concealment halted the running of the statute of repose; (3) North Carolina law recognizes a "disease exception" to the statute of repose, making the statute inapplicable; and (4) the 2009 amendment extended the statute of repose on their claims, which hadn't been extinguished before the amendment took place. I can and will rule on the first and second of those arguments, but North Carolina law appears (to me, at least) to be unsettled with respect to the third and fourth arguments.

The plaintiffs argue that because they couldn't have known what was happening within the implant areas, the statute of repose didn't begin to run until their revision surgeries took place and they found out what was happening to

---

occurred in September 2015, and she and her husband sued Biomet in August 2017.
 Edward Wohllber received his Biomet hip in August 2004. His revision surgery took place in January 2012 and he filed suit in September 2014.

[3] Surgeons implanted Charles Little's M2a-38 device in December 2004. They removed and replaced the device in October 2016. Mr. Little filed suit in June 2017.

them. As a general rule - a possible exception is discussed later - that isn't how North Carolina's statute of repose works. Some degree of awareness of the injury is required for a claim to accrue, but the existence or non-existence of a claim's accrual generally doesn't affect operation of the statute of repose. Black v. Littlejohn, 325 S.E.2d 469, 474-475 (N.C. 1985) ("the period contained in the statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted."); Bryant v. Don Galloway Homes, Inc., 556 S.E.2d 597, 600 (N.C. Ct. App. 2001) ("The repose period begins to run when an event occurs, regardless of whether or not there has been an injury."). Unless some exception to the general rule applies, that the plaintiff hasn't discovered the injury doesn't affect operation of the statute of repose. The first of the plaintiffs' arguments doesn't overcome Biomet's summary judgment motion.

For their second argument, the plaintiffs rely on equitable tolling, in the form of fraudulent concealment. By fraudulently concealing the nature and likelihood of injury from its product, the plaintiffs argue, Biomet tolled, or temporarily halted, the running of the statute of repose. Each of these plaintiffs filed suit shortly after revision surgery disclosed the problem.

Biomet contends that the plaintiffs can't raise summary judgment arguments based on fraud because they didn't plead fraud in their complaints pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, because a summary

4

judgment brief can't amend a complaint, and because the plaintiffs can't amend their complaint to include allegations of fraud because the time for amending the pleadings has passed. This argument didn't persuade me when I addressed the summary judgment motion in Debra Nunn's case out of Nebraska, and I remain unpersuaded for the reasons stated in that opinion.

> Biomet first argues that Ms. Nunn can't raise a claim of fraudulent concealment. Her complaint contains no such claim, she can't amend her complaint through a summary judgment brief, Anderson v. Donahoe, 699 F.3d 989, 997 (7th Cir. 2012), and the deadline for amending pleadings has long since passed. I agree that each of those propositions is true, but don't believe they foreclose Ms. Nunn's fraudulent concealment argument. Ms. Nunn isn't raising fraudulent concealment as an independent claim for damages or other relief; she invokes it as a type of equitable estoppel - a response to Biomet's affirmative statute of repose defense. Biomet's argument would be right if Ms. Nunn were trying to add a claim for damages, but she isn't. Biomet has cited no authority for the proposition that what the complaint contains or lacks limits what a plaintiff can argue in response to an affirmative defense.

Nunn v. Biomet, Inc., No. 3:14-cv-1487, Doc. No.195 at 3-4 (N.D. Ind. Dec. 21, 2018).

The North Carolina courts recognize the doctrine of equitable estoppel based on fraudulent concealment:

> The essential elements of equitable estoppel are: (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice.

5

Trillium Ridge Condo. Ass'n, Inc. v. Trillium Links & Vill., LLC, 764 S.E.2d 203, 216 (N.C. Ct. App. 2014).

The plaintiffs' equitable estoppel argument focuses on what they contend Biomet should have revealed about its products,[4] and Biomet vigorously disputes those arguments. Those disputes needn't be resolved because the plaintiffs presented neither argument nor evidence compliant with Fed. R. Civ. P. 56(c) that they relied on Biomet's conduct to their prejudice. There's no indication in this record that any plaintiff would have arranged an earlier revision surgery or filed an earlier complaint had they known what they say Biomet should have told the world. Without evidence of reliance, no reasonable jury could find that Biomet engaged in fraudulent conduct so as to toll statute of repose. Because the plaintiffs have the burden of proving that the statute of repose does not bar the claim, Robinson v. Bridgestone/Firestone North American Tire, L.L.C., 703 S.E.2d 883, 889 (N.C. Ct. App. 2011), their fraudulent concealment/equitable estoppel argument doesn't defeat Biomet's summary judgment motion.

That leaves the issues that I think need someone more familiar with North Carolina law than I.

---

[4] The plaintiffs cite statements said to have been made at the parties' "science day" presentation to me early in the case. I have disregarded those citations and statements. To expedite preparation for "science day," I told both sides that nothing said at the "science day" presentation could be used in the case for anything other than to orient me to the contentions and the issues.

The plaintiffs argue that the North Carolina courts don't apply the statute of repose to "latent injuries and diseases." Support exists for a North Carolina "disease exception" to the statute of repose, but the plaintiffs' approach, which assumes that the concepts of "injury" and "disease" are interchangeable, is unhelpful. The line of cases on which the plaintiffs rely draw an outcome-determinative distinction between latent injuries and latent diseases. *See, e.g.,* Stahle v. CTS Corp., 817 F.3d 96, 99 (4th Cir. 2016) ("Because we understand that under North Carolina law a disease is not a 'latent injury,' we conclude that the Supreme Court of North Carolina would not find Section 1-52(16) applicable to Stable's claim."); In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig., No. 4:08-MD-2004, 2016 WL 4385846, at *3 (M.D. Ga. Aug. 15, 2016) ("But Jeffcoat-Carter did not point to any evidence that she was diagnosed with a disease caused by ObTape. Rather, she experienced symptoms when her medical device eroded through her bodily tissues."). Stated simply, the "disease exception" on which the plaintiffs rely only encompasses latent diseases; the statute of repose applies as usual to latent injuries.

The "disease exception" flows from two cases decided in the mid-1980s. The first was Wilder v. Amatex Corp., 336 S.E.2d 66 (N.C. 1985). J.W. Wilder had worked as an insulating contractor handling asbestos-laden material for more than 40 years, not learning until a biopsy in 1979 that he suffered from asbestos. He filed suit in 1981. The defendant hadn't manufactured asbestos products since

7

1972, and sought refuge of the statute of repose. The North Carolina Supreme Court held that the otherwise applicable statute of repose (N.C. Gen. Stat. § 1-15(b)) doesn't apply when the claim involves a latent disease. The court explained why latent diseases are to be treated differently from other sorts of injury, whether latent or not:

> A disease presents an intrinsically different kind of claim. Diseases such as asbestosis, silicosis, and chronic obstructive lung disease normally develop over long periods of time after multiple exposures to offending substances which are thought to be causative agents. It is impossible to identify any particular exposure as the 'first injury.' Indeed, one or even multiple exposures to an offending substance in these kinds of diseases may not constitute an injury. The first identifiable injury occurs when the disease is diagnosed as such, and at that time it is no longer latent.

Wilder v. Amantex, 336 S.E.2d at 70. The court concluded that Mr. Wilder's asbestosis was a latent disease not diagnosed until 1979, meaning that he was well within the ten-year statute of repose when he filed suit in 1981.

Biomet disputes whether what the plaintiffs suffered is a "disease" for statute of repose purposes. If North Carolina law is found to recognize a "disease exception" to the statute of repose, that dispute will need to be resolved.

Hyer v. Pittsburgh Corning Corp., 790 F.2d 30 (4th Cir. 1986), was decided six months later. The facts mirrored those of the Wilder case. William Hyer had worked for decades as an insulator before retiring in 1976. His asbestosis wasn't diagnosed until 1981 (a 1978 test was negative), and he filed suit the same year. Pittsburgh Corning sought the refuge of the apparently applicable six-year statute

of repose. The district court, ruling before Wilder had been decided, granted summary judgment to Pittsburgh Corning, and the Fourth Circuit reversed on the basis of the Wilder decision. The court slowed its otherwise brisk analysis briefly at recognition that a different statute of repose was involved, but predicted that the North Carolina Supreme Court would apply the same reasoning to the statute at issue in Hyer. The court added little reasoning to what the North Carolina Supreme Court had done in Wilder.

With an important exception yet to be discussed, federal decisions since 1986 have followed the Fourth Circuit's reading of North Carolina law as providing a "disease exception" to the statute of repose. *See, e.g.*, Stahle v. CTS Corp., 817 F3d 96, 100-104 (4th Cir. 2016); In re Dow Corning Corp., 778 F.3d 545, 552 n.2 (6th Cir. 2015); Brackett v. Abex, 2011 U.S. Dist LEXIS 122139 *2, n.1 (E.D. Pa. Feb. 28, 2011) (MDL 875); Malpass v. Armstrong World Indus., 2011 WL 4907390, at *1, n.1 (E.D. Pa. Mar. 2, 2011) (MDL 875); Jones v. United States, 2011 WL 386955, at *2 (E.D.N.C. Feb. 3, 2011). My research and reading of the briefs on this motion don't reveal any decision by a North Carolina appellate court addressing the issue since Wilder, consistent with the inexorable migration of product liability suits in the federal courts and then into multidistrict litigation over the past 30+ years.[5]

---

[5] The plaintiffs' response brief makes reference to "a cascade of North Carolina case law since 2011 describing the exception for latent injuries and diseases in products liability cases." [Doc. No. 3591 at 7]. I haven't been able to locate the

9

Klein v. DePuy, Inc., 506 F.3d 553 (7th Cir. 2007), points the other way. Thomas Klein developed osteolysis in the area in which a DePuy prosthesis had replaced his hip in 1998. The osteolysis was discovered during his 2006 revision surgery. Mr. Klein apparently had some idea of what was happening to him even before the revision surgery, because he filed suit in 2005. Because more than six years had elapsed between his original surgery and the filing of his suit, DePuy moved for summary judgment. Mr. Klein offered Hyer and Wilder as support for the proposition that the statute of repose didn't apply to his latent disease.

The Seventh Circuit held that Hyer got North Carolina law wrong. The court began and ended its analysis with Wilder. After reviewing that opinion, the court decided that Hyer was wrong when it extended the "disease exception" to statutes that did not already address latent injuries. Since Hyer wasn't a correct analysis of North Carolina law, as the Seventh Circuit panel saw it, the Klein court turned back to Wilder to decide what North Carolina law was. The Klein court considered it crucial that it wasn't considering a statute of repose similar to what the North Carolina Supreme Court looked at in Wilder. The statute of repose in Klein said nothing about accrual or latent injuries, making it irrelevant whether Klein involved a latent disease, a latent injury, or anything else that might make the statute inapplicable. Given the Wilder court's focus on a particular statute of repose's reference to such things as accrual and latent injury, the Klein court

---

cascade.

decided the "disease exception" didn't affect statutes of repose with no such references - such as the one at issue in Klein.

If I take the Klein approach, in which each statute of repose must be analyzed separately, there appears to be a question of first impression under North Carolina law: whether a "disease exception" exists for the statute of repose that applies in these cases. If I take the Hyer approach, the Wilder "disease exception" applies to all (or at least many) statutes of repose. It's the task of a court sitting in diversity to predict how the state's highest court would resolve the question, *see, e.g.*, E.T. Products, LLC v. D.E. Miller Holdings, Inc., 872 F.3d 464, 468 (7th Cir. 2017); Stevens v. Interactive Financial Advisors, Inc., 830 F.3d 735, 741 (7th Cir. 2016). A federal district court sitting in North Carolina has a much better chance than I of getting the answer to this question right.

I can say with greater confidence that the remaining issue presents a question of first impression. The plaintiffs argue that the 2009 amendment extended the statute of repose, changing it from six years to twelve years from the initial purchase. Product liability cases under North Carolina law generally are governed by the statute of repose in effect when the product purchase occurs, In re Mentor Corp. Obtape Transobdurator Sling Prods. Liab. Litig., No. 4:08-MD-2004, 2015 WL 9461489, at *2 (M.D. Ga. Dec. 23, 2015), and a statutory amendment can't revive a claim that the originally applicable statute of repose already has extinguished. Lackey v. DePuy Orthopaedeics, Inc., No. 5:10-CV-30

11

RLV, 2011 WL 2791264, at *4 (W.D.N.C. 2011); Colony Hill Condominium I Ass'n v. Colony Co., 320 S.E.2d 273, 276 (N.C. Ct. App. 1984).

But the plaintiffs' argument isn't one of resurrection. They contend that their claims were alive and kicking (though not yet accrued) when the legislature repealed N.C. Gen. Stat. § 1-50(a)(6) and changed the repose period from six years to twelve. The legislature, of course, has authority to modify the legislatively-created repose period for claims not already extinguished. McCrater v. Stone & Webster Eng'g Corp., 104 S.E.2d 858, 861 (N.C. 1958) ("where statutes prescribing limitations within which particular rights may be enforced relate to remedies only, and not to substantive rights, ordinarily the legislature has the power to enlarge the time necessary to constitute the bar of limitation, and to make it applicable to existing causes of action, provided such change is made before the cause of action is barred under the pre-existing statute of limitations."). That's what the plaintiffs say happened here: their claims hadn't been extinguished before the amendment, so they are governed by the post-amendment twelve-year period running from their purchase of the M2a devices.

Biomet cited a series of cases for its proposition that the legislature can't do what the plaintiffs contend it did, but in each of those cases, the plaintiff's claim had already been extinguished before the law changed, so the issue wasn't one of extending the repose period for an extant claim. One of the cases had language that could doom our plaintiffs' arguments: the North Carolina Court of Appeals

said, "To the extent that plaintiffs are arguing that the courts should apply N.C. Gen Stat. § 1-46.1(1)to this action, we are barred from doing so by the General Assembly's decision not to make the revised statute of repose retroactive." Robinson v. Bridgestone/Firestone North American Tire, L.L.C., 703 S.E.2d 883, 886-887 (N.C. Ct. App. 2011). But that court cited no authority for that doctrine of legislative primacy, and the plaintiff's claim in Robinson already had been barred before the amendment went into effect.

Even if a legislative declaration of retroactivity is required, North Carolina law provides little guidance on what such a declaration must say. Our plaintiffs point to what the legislature said about the effective date of the 2009 amendment: "This act becomes effective October 1, 2009, and applies to causes of action that accrue on or after that date." 2009 N.C. Sess. Laws 2009-420 § 3. Biomet doesn't contend that any claim of these plaintiffs accrued before October 1, 2009.[6]

Still, the plaintiffs didn't cite any North Carolina case that held what they press for here - that the legislature had amended a statute of repose in such a way as to add six years onto the repose period that already had been running. Again, it seems to me that a federal judge who regularly deals with North Carolina law

---

[6] Biomet didn't take a position on when the plaintiffs' causes of action actually accrued; plaintiffs contend they accrued at the time of their revision surgeries – all of which occurred after October 1, 2009. While a claim's accrual generally doesn't affect operation of the statute of repose, see Black v. Littlejohn, 325 S.E.2d at 474-75; Bryant v. Con Galloway Homes, Inc., 556 S.E.2d at 600, it may in cases, like these, that fall between the old statute of repose and the new.

13

has a better chance of getting this issue - apparently one of first impression - right.

If I simply defer ruling and leave these motions pending, there is a good chance the judges in North Carolina who are assigned the cases won't catch them. To try to keep that from happening, I will DENY Biomet's motions for summary judgment in the following cases, without prejudice to filing in the court in which the case would be tried: Wohlleber [Doc. No. 169 in 3:14cv2002], Clifford [Doc. No. 100 in 3:15cv540], Chapman [Doc. No. 31 in 3:16cv871], Hughes [Doc. No. 26 in 3:17cv455], Little [Doc. No. 24 in 3:17cv507], McGinnis [Doc. No. 24 in 3:17cv509], and Wise [Doc. No. 24 in 3:17cv603].

SO ORDERED.

ENTERED:   January 3, 2019

/s/ Robert L. Miller, Jr.
Judge, United States District Court
Northern District of Indiana